Argued March 5, reargued June 1, affirmed October 21, 1964

# LEWIS ET AL, *v.* WORLDWIDE IMPORTS, INC. ET AL

395 P. 2d 922

*Francis E. Harrington,* Portland, argued and re-argued the cause and filed a brief for appellants. With him on the brief was Richard L. Amato, Portland.

*Harlow F. Lenon,* Portland, argued and reargued the cause and filed a brief for respondents. On the brief were Lenon & Willner, Portland.

Before McAllister, Chief Justice, and Perry, Sloan, O'Connell, Goodwin and Denecke, Justices.

O'CONNELL, J.

This is an action to recover damages for an alleged fraudulent representation in the sale of an automobile by defendant Worldwide Imports, Inc. to plaintiffs. Defendants appeal from a judgment on a verdict for plaintiffs.

The complaint charges that defendant, with the intent to deceive, falsely represented that the automobile was a demonstrator in the condition of a new car when in fact it had been involved in an accident in which it was extensively damaged. It was further alleged that the representations were willful and malicious. Plaintiffs prayed for $800 general and $1,000 exemplary damages. The jury returned a verdict of $600 general and $1,000 exemplary damages.

The judgment is attacked on the ground that there was insufficient evidence to establish (1) fraud, (2) conduct sufficient to sustain the verdict for punitive damages, or (3) the market value of the automobile at the time of the sale.

 The record clearly discloses sufficient evidence to establish a fraudulent representation under circumstances warranting the imposition of punitive damages. Defendants rely upon *Cays v. McDaniel et al,* 204 Or 449, 283 P2d 658 (1955) in support of their contention that there was not sufficient evidence of malice to justify the recovery of punitive damages. In the *Cays* case the defendant represented that the automobile was new when in fact it had been driven more than 5,000 miles. Defendant had turned back the speedometer as a part of his scheme of deception. The complaint contained no allegation of facts showing circumstances of aggravation justifying the allowance of punitive damages. In denying punitive damages, the court said:

"* * * If a plaintiff relies upon circumstances of aggravation as the basis of his claim for puntive damages, those circumstances must be alleged in the complaint." 204 Or at 457.

The complaint in the case at bar contained allegations sufficient to show circumstances of aggravation. In the *Cays* case the court further said that "wholly apart from the matter of pleading, the record itself fails to establish any aggravating circumstances of the character necessary to form the basis of an allowance of punitive damages." (204 Or at 458). If, by this, the court meant that turning back a speedometer for the purpose of deceiving a purchaser is not sufficient to support the imposition of punitive damages against the seller, we are unable to agree and to this extent *Cays v. McDaniel,* supra must be overruled.

A more difficult problem is raised by defendants' third contention, i.e., that there was not sufficient evidence of the market value of the automobile in question at the time of sale. The only evidence of market

value supporting plaintiffs' theory of the case is the testimony of the plaintiffs, H. W. Lewis and Lillian Lewis. Plaintiff H. W. Lewis testified as follows:

"Q * * * You have alleged in your complaint that your total actual damage, you and your daughter, is $800. Now, how do you arrive at $800 as the damage?

"A Only that I wouldn't a-paid a thousand dollars for it if I'd known it had been wrecked, or more than a thousand."

Plaintiff Lillian Lewis, the daughter of H. W. Lewis, the co-plaintiff, testified as follows:

"Q You have alleged that the damage to you and your father is in the total amount, the actual damage is in the total amount of $800. How do you arrive at that figure?

"A Well, we discussed it between the family and we decided that we would not have paid as much as we did. We would have paid at least $800 less, or at least under a thousand for the car had we known its condition.

"Q Were you able, or have you fixed in your mind what the value of the car was in fact at the time you bought it?

"A Well, I'm no expert, but I would say no more than $900 to a thousand dollars.

"Q Now, have you talked to your father about that?

"A Yes, sir."

On cross-examination she was asked:

"Q Do you have any familiarity with the fair cash market value of automobiles being sold in the Portland area in June of 1960?

"A No, sir, I don't.
"* * * * *

"Q I don't mean to put words in your mouth, but let me ask you this: Is it a fair statement that

your testimony in direct examination to Mr. Lenon about money just came from a discussion you had with your family?

"A Yes, sir."

■ The admission by Lillian Lewis that she was not familiar with the fair cash market value of automobiles, generally, in the Portland area at the time of the sale does not render her testimony incompetent. The competency of an owner to testify as to the market value of his own property is not conditioned upon his knowledge of the market value of other similar property in the vicinity. At least this is the rule when the testimony is given as to the value of the owner's land.[1] There is no reason for applying a different rule where the owner testifies as to the value of his automobile. In both cases it might well be asked how the owner of property arrives at the market value of his own property if he has never received an offer for it and does not know what other similar property in the vicinity is being sold for by so-called "willing sellers" to so-called "willing buyers." The fact that courts permit the owner to testify where it is apparent that the only basis for his estimate of the value of his land is his use or his knowledge of the adaptability of the land to certain uses[2] suggests that the rule permitting the

[1] "The usual expert is qualified by proof of his familiarity with the property and with other property in the neighborhood, his experience in the business, his familiarity with the state of the market and of sales of similar property in the vicinity. * * * A property owner, on the other hand, is generally considered competent to estimate the value of his property upon a showing that he has resided thereon for a number of years." People v. La Macchia, 41 Cal2d 738, 746, 264 P2d 15 (1953). Accord, McCaffery v. Northern Pac. Ry. Co., 22 N D 544, 134 NW 749 (1912); Provo River Water Users' Assoc. v. Carlson, 103 Utah 93, 133 P2d 777 (1943).

[2] E.g., Weber v. West Seattle Land & Imp. Co., 188 Wash 512, 516, 63 P2d 418 (1936): "It is settled law in this state that the

owner to testify in such cases is unsound[8] or that the price of property on the market is not the only legal criterion for establishing value of property. It is possible that the acceptance of this rule is a tacit recognition that value to the owner is a far more important factor in the indemnification of the owner than the courts are willing to admit.[9] But proceeding on the assumption that knowledge of the market value of the property in question is the standard which must be met, we are of the opinion that the plaintiffs' testimony was sufficient to meet it in the present case.

Lillian Lewis testified that the automobile had a value of "no more than $900 to a thousand dollars." She also testified that "we would have paid at least $800 less, or at least under a thousand dollars for the car had we known its condition." H. W. Lewis testified to the same effect, stating that he "wouldn't a-paid a thousand dollars for it if * * * [he had] known it had been wrecked, or more than a thousand."

Lillian Lewis' testimony that the automobile had a value of "no more than $900 to a thousand dollars" is a direct statement of the value of the automobile. This statement, as well as her statement as to how much she and her father would have paid for the auto-

---

owner of property may testify to its value upon the assumption or presumption that he is so far familiar with the property and its uses as to know its worth."

[8] Cf. State Highway Commission v. Assembly of God et al, 230 Or 167, 177, 368 P2d 937 (1962); Freedman v. Cholick et ux, 233 Or 569, 577, 379 P2d 575 (1963).

[9] See 1 Orgel, Valuation Under Eminent Domain § 37 (1953), stating that "the indemnity principle would require the acceptance of value to the owner as the only strictly relevant value." Compare 2 Orgel, Valuation Under Eminent Domain, § 246 (1953) summarizing the "diverse ways in which the courts modify the concept of market value so as to bridge the gap between a strict sale price and value to the owner."

mobile if they had known of its condition, may be regarded as her estimate of the market value of the automobile rather than as an expression of the special value the automobile would have to them as owners. In other words, plaintiffs' testimony may be interpreted as meaning that they would not have paid more than $1000 for the automobile if they had known of the defects because that was the market value of the automobile in that condition and that they would not pay more than its market value.

There was nothing in the testimony of the witnesses to suggest that they felt that they were entitled to purchase the automobile at less than market value because it had a value less than that which it would have to other purchasers in the market. Lillian Lewis' answer on cross-examination that her testimony on direct examination "about money just came from a discussion [she] had with her family," is not necessarily an admission that she did not have her own opinion as to the value of the automobile. In her direct examination she stated that "we discussed it between the family and we decided that we would not have paid as much as we did." Her answer on cross-examination amounted to nothing more than a statement that the decision as to the value of the car was made at the famliy meeting. For all we know she may have contributed more to the discussion of the value of the automobile than other members of her family.

H. W. Lewis testified that his experience in purchasing automobiles, including used automobiles, was fairly extensive. Lillian Lewis testified that she "participated" in at least "watching" the purchase of these automobiles. Both witnesses would have, therefore, a basis for making an evaluation of the market value of used cars. If an owner testifies as to the value of his

property without explaining the basis of his appraisal, it is up to opposing counsel in cross-examination to show that the witness' opinion is not based upon acceptable factors. This defendants did not do in the case at bar.

It may have been possible to obtain witnesses who were better informed as to the value of the automobile in question but as the trial judge correctly pointed out, it was plaintiffs' obligation to present *adequate,* not necessarily the best, witnesses. As we have already pointed out, an owner is a competent witness unless it is shown that he has no knowledge of the market value of his property in spite of his ownership.[9]

It is to be borne in mind that the value sought to be shown was the value more than two years prior to the trial. Moreover, the evaluation had to be made in light of the previous damage to the car and the extent to which the repairs had rehabilitated it. Under these circumstances an appraisal based upon a general knowledge of the market price of automobiles suffering the normal ravages of use would be less likely to reflect the market value than that based upon specific knowledge of the condition of the automobile which, admittedly, plaintiffs had.

The judgment is affirmed.

---

[9] A few jurisdictions apparently allow owners to testify respecting value without regard to the owner's knowledge; at least one court has held an owner competent to testify despite his proven ignorance of the values in question. McCaffery v. Northern Pac. Ry. Co., 22 N D 544, 134 NW 749 (1912). In the states which do require some knowledge on the part of the owner, it sometimes appears that the owner is permitted to testify with less knowledge of market value than that required of other value witnesses. United States v. 3969.59 Acres of Land, 56 F Supp 831, 837 (D Idaho ND 1944); Weber v. West Seattle Land & Imp. Co., 188 Wash 512, 63 P2d 418 (1936).

DENECKE, J., specially concurring.

The problem raised by this case is caused by the acceptance by this court, and most others, of two conflicting rules. We accept the rule of damages as being the difference between the "market value" of the automobile and the price paid. We accept the rule that an owner, because he is owner, although he has no other qualifications, is competent to express an opinion of the "market value" of his automobile. Accentuating the dilemma, we have held that "personal value" to the owner as distinguished from "market value" is not a correct basis upon which to measure damages. *Moss v. Peoples Calif. Co.*, 134 Or 227, 237, 293 P 606 (1930).

The majority retains the difference between "market value" and the purchase price as the proper measure of damages. The majority also assumes, for the purpose of this case, that the owner's testimony must be of "market value" and, therefore, the owner must have some knowledge of the market. The majority solves the dilemma, as regards the testimony of Lillian Lewis, by concluding that Lillian Lewis had an opinion of the "market value" of this particular car and her testimony was of "market value." They so concluded despite her testimony that she was not familiar with the market value of automobiles being sold in Portland.

H. W. Lewis testified that he would not have paid more than $1,000 for the car if he had known it had been wrecked. The majority states that the defendants cannot complain about the basis of this opinion as they did not cross-examine to show that it had an improper basis. *Nelson v. Leo's Auto Sales, Inc.*, 158 Me 368, 185 A2d 121 (1962), held identical testimony was only of personal value, not market value.

In my opinion this reasoning is questionable. I concur with the result, however, in the belief that in most instances owners testify to "personal value," rather than "market value," even though their testimony is framed in the terms of "market value." Courts tolerate this, and I believe will continue to do so. Unless the property to be valued has a market, such as securities or commodities, it is so difficult to ascertain value that an owner's estimate of "personal value" is probably as probative as the testimony of "market value" by one who has qualified as an expert. The dangers inherent in the receipt of an owner's subjective testimony are at least partially offset by the effect of the obvious interest of the witness upon the weight to be given such testimony.