MILLIKIN et ux, *Respondents,*
*v.*
GREEN et al, *Appellants.*

GREEN et al, *Plaintiffs,*
*v.*
HILL et ux, *Defendants.*

HILL et ux, *Plaintiffs,*
*v.*
WINTERSTEIN, *Defendant.*
(No. 76-3987, SC 25418)
583 P2d 548

Robert Scholl, Eugene, argued the cause and filed briefs for appellants.

H. Thomas Evans, of Evans & Armstrong, Eugene, argued the cause and filed a brief for respondents.

Before Holman, Presiding Justice, and Tongue, Howell, Bryson, Lent, and Linde, Justices.

HOLMAN, J.

## HOLMAN, J.

This is an action by the purchasers for damages arising out of the sale of a residence. Insofar as this appeal is concerned, there were two causes of action—one for fraud and the other for breach of covenant of title in the warranty deed purporting to pass title. The case was tried to the court without a jury and a judgment was rendered for compensatory and punitive damages on both causes of action. Defendants appeal. The litigation involved third party claims but we are not concerned with them in this appeal.

We shall take up the fraud cause of action first. Defendants built and sold to plaintiffs a new residence. The parties signed the earnest money agreement on September 8, 1975. On November 12, 1975, the City of Eugene advised defendants that the roof of the residence would have to be removed and replaced to comply with the city's building code. On December 1, 1975, the parties closed the sale without defendants' telling plaintiffs that the roof would have to be replaced. Plaintiffs subsequently replaced the roof more than seven months later.

■■ Concealment of a known fact that is material to the transaction amounts to actionable fraud. Defendants contend there is no evidence of materiality and the trial court erred in entering a judgment for plaintiffs. A misrepresentation is material where it would be likely to affect the conduct of a reasonable man with reference to a transaction with another person. *Heverly v. Kirkendall,* 257 Or 232, 237, 478 P2d 381 (1970). A roof that must be replaced is certainly material to the sale of a newly built dwelling. In addition, plaintiffs testified that they would not have purchased the dwelling had they known the roof needed to be replaced.

■ Defendants contend that because they did not know at the time the earnest money agreement was signed that the roof had to be removed, they committed no fraud. The answer to this is that they completed the

[ 285 ]

transaction after they had such knowledge. They knew also that there was a question about the roof before the earnest money agreement was signed, but they said nothing.

■ Defendants also contend there was insufficient evidence of aggravating factors demonstrating a disregard of social obligations sufficient to justify punitive damages. Defendants argue that the bad roof was not their fault but was the fault of the subcontractor; that they sued the subcontractor and out of that suit came an agreement by the subcontractor to replace the roof, but plaintiffs would not permit the work to be done. This offer to plaintiffs to replace the roof was not made until seven months after the consummation of the sale, and there is no reason plaintiffs were obliged to accept the work of someone whose skills had already produced one substandard roof. Punitive damages are awarded in those instances where the violations of societal norms are (1) of an aggravated nature and (2) of the kind that sanctions would tend to prevent. *Noe v. Kaiser Foundation Hosp.,* 248 Or 420, 425, 435 P2d 306, 27 ALR3d 1268 (1967). Defendants never explain why, knowing the facts, they completed the transaction with plaintiffs without telling them of the defective roof. If punitive damages can ever be justified it is in a fraudulent situation such as this.

There were no errors attendant the cause of action for fraud.

■ The second count concerns defendants' failure of title to part of the land which they transferred by warranty deed to plaintiffs. Defendants assign as error the entry of a judgment against them on this count. Defendants had previously sold the land adjacent that which was sold to plaintiffs to a purchaser by the name of Huling. At the time of the sale to plaintiffs, a dispute existed between defendants and Huling concerning the boundary between the land sold to Huling and that subsequently sold to plaintiffs. Defendants did not advise plaintiffs of this dispute.

[ 286 ]

When selling the property to plaintiffs, defendants pointed out a fence which was then in place between the Huling property and that offered to plaintiffs. It is conceded that defendants told plaintiffs that the fence was the boundary line. After purchasing the property, plaintiffs discovered that their deed description extended beyond the fence and included the disputed property to which Huling eventually secured title.

Defendants contend this situation is the same as that in *Liddycoat v. Ulbricht,* 276 Or 723, 556 P2d 99 (1976), in which the seller pointed out some rose bushes as being the boundary line. He did not know that the legal description of his property and that which he used in his deed to the buyer extended beyond the rose bushes. The neighbor secured title to the land beyond the rose bushes by adverse possession in litigation with the purchaser. The purchaser then brought an action similar to this one against the seller. The court said:

> "In such a case relief should be granted, as a result of the parties' mutual mistake as to the quantity of land sold, only when it appears that the parties would not have made the contract had the true facts been known to them. In other words, was the mistake material to the formation of the contract? When a purchaser can look at the boundaries of the property and thereafter base his decision to buy on having seen those boundaries and knowing therefrom the piece of property he is buying, the sale is made in gross. In such a case, the buyer is not influenced by the measure of the surface area or by the size of the property so much as he is by its boundaries; and if it develops that the measurements are not what the buyer originally thought they were, the buyer is nevertheless bound to take the property because he gets substantially that which he thought he was buying. No relief should be granted because a contract or deed describes a piece of property as being larger than that which the parties thought they were transferring [citing cases]." 276 Or at 726-27.

Plaintiffs contend *Liddycoat* is not applicable to the

present situation. Their contention is expressed as follows:

> "In the instant case Mr. Green pointed out the fence as being the boundary line but there the similarity of the cases ends. The misrepresentation of the boundary line by Mr. Green was not innocent but was made by him at a time when the boundary was in fact in litigation. That, then, was not a case of mutual mistake, but a deliberate misrepresentation. * * * The testimony of Mr. Green * * * as stipulated by counsel that he hadn't deeded the property to Mr. Huling because this dispute had come up and until it is resolved he has no intention of deeding it shows a lack of responsibility and a lack of due care of the standard that should be imposed upon a licensed broker in the state of Oregon when dealing with persons buying homes. It shows a complete disregard for the rights of Plaintiff as buyer of a new home."

The important consideration is not that defendants knew of the disputed title or whether there was a mutual mistake but, rather, what defendants represented they were selling to plaintiffs and what plaintiffs thought they were buying. Plaintiffs seek to infer bad motive out of defendants' failure to tell them about the dispute. So long as defendants were not representing to plaintiffs that they were selling the disputed portion to them and so long as plaintiffs did not think they were buying it, it is difficult to see how any venality is involved or how plaintiffs have been injured. Because the property was platted into lots, plaintiffs are claiming, without articulating it well, that defendants should have explained to them they were not getting a full lot. If this transaction was a sale in gross (and the evidence demonstrates that it was), the existence of the lot description and plaintiffs' failure to get a full lot are irrelevant. It is our conclusion that the rule of *Liddycoat* is applicable and that the trial court erred in awarding a judgment on the action for breach of covenant of title since plaintiffs received exactly that which defendants represented they were selling and which plaintiffs thought they were buying. Plaintiffs so admitted.

[ 288 ]

The judgment based upon the cause of action for fraud is affirmed, and the judgment based upon the cause of action for breach of covenant of title is reversed.