Argued and submitted November 16, 1979, affirmed
February 11, reconsideration denied March 20,
petition for review denied May 20, 1980 (289 Or 155)

KIMBALL, et al,
*Appellants,*
*v.*
LITTLE RIVER LUMBER CO.,
*Respondent.*

(No. L78-0012, CA 12819)
(Order Allowing Attorney Fees)

Roger Tilbury, Portland, argued the cause for appellants. On the brief were David C. Miller, and Haessler, Stamer & Tilbury, Portland.

Scott M. Galenbeck, Springfield, argued the cause for respondent. With him on the brief was Lively & Wiswall, Springfield.

KIMBALL, et al,
*Respondents,*
*v.*
LITTLE RIVER LUMBER CO.,
*Appellant.*

(No. L78-0012, CA 12819)
(Judgment)

606 P2d 660

Argued and submitted November 16, 1979.

Scott M. Galenbeck, Springfield, argued the cause for appellant. With him on the briefs was Lively & Wiswall, Springfield.

Roger Tilbury, Portland, argued the cause for respondents. With him on the brief were Kim T. Buckley, David C. Miller, Darryl E. Johnson, and Haessler, Stamer & Tilbury, Portland.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges, and Tongue, Judge Pro Tempore.

ROBERTS, J.

**ROBERTS, J.**

Defendant appeals from the jury verdict in favor of plaintiffs in the amount of $75,000 for breach of two logging contracts. Plaintiffs separately appeal the award of $7,500 in attorney fees, contending the award was inadequate. We affirm.

The parties entered into two separate contracts involving two separate geographical areas in which defendant had purchased the right to remove timber for a specified period of time. Plaintiffs contracted to perform certain of the logging operations.

The contract involving the "Pass Creek" area in Douglas County was entered into on April 6, 1977, and required that plaintiffs skid, deck and load all the timber on the site. Plaintiffs were required to install a bridge and clear the roadway before beginning the logging operations. They encountered various difficulties with rainy weather and equipment breakdowns. By May 23, 1977, they had removed 79 loads of an estimated 800 to 1000 loads which the contract required be removed by November 15, 1977. On May 23, 1977, defendant terminated the contract.

The other contract involved a nearby area known as the "Granddad sale" on U.S. Forest Service property. Operations were to begin under that contract on May 1, 1977 and to be completed by November 30, 1979. As of May 23, 1977, a subcontractor brought in by plaintiffs with defendant's approval had loaded approximately 66,000 board feet of what eventually proved to be 5,659,580 board feet on the site. Defendant also terminated that contract on May 23, 1977.

Both contracts provided that plaintiffs must "* * * diligently and continuously pursue said operations, except to the extent [they are] prevented or materially hindered by causes beyond [their] reasonable control." Both also contained provisions indicating that time was of the essence.

[499]

Plaintiffs' action sought lost profits from both jobs. Defendant alleged as an affirmative defense that plaintiffs breached both contracts before May 23, 1977, and, therefore, it was justified in terminating the contracts as it did.

The case was tried to a jury which returned a verdict in favor of plaintiffs in the amount of $39,000 on the Pass Creek contract and $36,000 in the Granddad sale contract. The trial court awarded plaintiffs $7,500 of the $13,460.17 attorney fees they sought.

Defendant assigns as error the denial of its motions for nonsuit made at the close of plaintiffs' case and renewed in the form of motions for a directed verdict at the close of all the evidence. There were two grounds for the motions. Defendant first contends that plaintiffs' own evidence showed that they breached the contracts before defendant terminated them in that plaintiffs failed to perform "diligently and continuously" in face of the time limits involved.

In reviewing the evidence in the light most favorable to plaintiffs, as we must, *Wootten v. Dillard,* 286 Or 129, 592 P2d 1021 (1979); *Welch v. U.S. Bancorp,* 286 Or 673, 596 P2d 947 (1979), we find that a jury question was presented as to whether plaintiffs performed "diligently and continuously * * * except to the extent * * * prevented or materially hindered by causes beyond [their] reasonable control." The problems plaintiffs encountered with the rainy weather and equipment failures were obviously a factor in the slow pace of their operations prior to termination by defendant. Whether plaintiffs' response to those problems amounted to diligent and continuous pursuit of the operations was a question for the jury.[1]

---

[1] In oral argument defendant contended that under the terms of the contracts it had the option to terminate if it appeared, in the sole judgment of defendant, that the work would not be completed within the time limits set by the contracts. Defendant argues that bad faith is the only possible breach under that provision and bad faith was neither pleaded nor proven. Defendant did not, however, raise this interpretation of the contracts at

The second ground for defendant's motions for non-suit on the two contracts was plaintiffs' purported failure to produce sufficient evidence of lost profits to allow the jury to award damages without speculation. This argument is two-pronged. First, it is contended that plaintiffs did not produce any evidence that they would have made any profit on either of the two contracts. Secondly, defendant challenges the sufficiency of the evidence introduced to show the amount of profit plaintiffs would have made had they been allowed to complete the contracts.

Although defendant is correct that plaintiffs did not specifically testify or produce evidence directly stating that they would have made a profit, they are not precluded from recovering. There was evidence, although not uncontradicted, that plaintiffs could have completed both contracts within the time limits of the contracts without incurring significant costs in addition to those anticipated costs used in calculating the amount of profit claimed by plaintiffs. We hold that the calculations used in projecting the amount of lost profit, based on the known expenses involved and the past, although short, history of plaintiffs partnership, were sufficient to allow the jury to find that plaintiffs would have made a profit on the two contracts in question.

In reviewing evidence of lost profits we are now guided by the recent Supreme Court decision in *Welch v. U.S. Bancorp.,* 286 Or 673, 596 P2d 947 (1979). *Welch* begins its analysis of the issue of lost profits with the fundamental proposition that consequential damages are recoverable if they are reasonably

trial (nor, for that matter, in either its original or reply briefs). Defendant's affirmative defense, pleaded in its answer and relied upon in its motions for nonsuit, was plaintiffs' prior breach of the contracts. Matters not presented in the trial court will not be considered on appeal absent special circumstances. *Friesen v. Fuiten,* 257 Or 221, 478 P2d 372 (1970); *Travelers Indemn. v. American Ins.,* 278 Or 193, 563 P2d 684 (1977); *Leiser v. Sparkman,* 281 Or 119, 573 P2d 1247 (1978). No special circumstances are presented here.

foreseeable. Obviously defendant was aware that plaintiffs expected to make a profit from their execution of the contract. Here, as in *Welch,* "[l]oss of profits from nonperformance of the agreement, if it occurred, was foreseeable." 286 Or at 704.

The Supreme Court in *Welch* pointed out that it had previously adopted McCormick's interpretation of the term "reasonable certainty" which has been the standard of proof required for recovery of lost profits:

" "* * * [I]t appears that the epithet "certainty" is overstrong, and that the standard is a qualified one, of "reasonable certainty" merely, or, in other words, of "probability." ' " *Cont. Plants v. Measured Mkt.,* 274 Or 621, 624, 547 P2d 1368 (1976).

While the "probability" test is the standard to be employed by the finder of fact, *Welch* held that in a jury trial the court should intervene to take the issue of lost profits from the jury

"* * * only when it can say that the evidence is *clearly insufficient* to establish the claim of lost profits. This does not mean that the court should withdraw the question just because the court is not convinced by the evidence. * * * If reasonable men could be persuaded of the validity of the claim on the evidence presented, the jury must be allowed to make the decision." (Citation omitted.) 286 Or at 704-5.

We find that the plaintiffs presented evidence of lost profits which was not "clearly insufficient" to establish their lost profits claim. Their evidence consisted of the testimony of their bookkeeper, who was experienced in bookkeeping for logging operations. He testified to the figures ultimately awarded by the jury.

His testimony on the Pass Creek contract was an extrapolation from the prior year's income tax return of the plaintiffs' partnership. The partnership had been in operation during the previous year performing jobs similar to those at issue here. The bookkeeper took comparable items of expenses and determined a ratio to profits made for that year. Certain figures

were adjusted upward or downward based on differences between the previous year's operations and the contract at issue. Where the costs involved in the contract were known, those amounts were used. He then projected a figure for total expenses and deducted that from the projected gross income from the contract.[2]

For the Granddad sale contract the bookkeeper simply deducted the rate per load to be paid to the subcontractor from the rate per load under the contract and multiplied by the estimated number of loads on the parcel.[3] Although some of the evidence suggested that the subcontractor would not necessarily complete the entire contract, there was no showing that he was unwilling or unable to do so.

We do not find plaintiffs' evidence to be "clearly insufficient" to establish lost profits. The motions for nonsuit on that basis were properly denied.

Defendant's final assignment of error is that the trial court abused its discretion in admitting the testimony of plaintiffs' bookkeeper as an expert witness regarding lost profits suffered by plaintiffs as a result of the termination of the contracts by defendant. The determination of a witness' qualification as an expert is within the trial court's discretion. *State Highway Com. v. Arnold et al,* 218 Or 43, 341 P2d 1089, 343 P2d 1113 (1959); *Unified Sewerage Agency v. Duyck,* 33 Or App 375, 576 P2d 816 (1978). This witness had 13 years experience as a bookkeeper, the last 6-1/2 of which have been primarily with logging firms. He testified that about 90 percent of his clients are loggers. That is sufficient support for the trial court's admission of his testimony as an expert and it was not an abuse of discretion to allow his testimony.

---

[2] This was based on an estimated number of board feet which was lower than the total which was actually produced from the parcel covered by the contract.

[3] For reasons that are not pertinent here payment on the Pass Creek contract was by the board foot whereas payment for the Granddad sale contract was by the load.

Plaintiffs separately appeal the award of attorney fees made by the trial court. Plaintiffs sought $13,460.17 in attorney fees and the trial court awarded $7,500. The award was made by the court based on affidavits, the procedure stipulated by the parties. The affidavits of plaintiffs' attorneys show that the trial attorney determined that $50 per hour was a reasonable rate for his time and that of another attorney who did some research during the trial, and sought a total of $4,825 for preparing and trying the case. After trial another attorney was associated by trial counsel to prepare responses to defendant's motions for judgments notwithstanding the verdict based on the failure to prove damages. The amount claimed by that attorney to be reasonable for his time and that of an associate in preparing the briefs was over $8,000.

What constitutes "reasonable" attorney fees in any particular action is a question for the trier of fact. *Pritchett v. Fry,* 286 Or 189, 593 P2d 1133 (1979). In an action at law the finding of a reasonable amount for attorney fees has "* * * the same force and effect as a jury verdict and may be set aside only if * * * not supported by any substantial competence evidence." *Highway Com. v. Zachary et al,* 230 Or 381, 383, 370 P2d 237 (1962), and *see Urban Renewal v. Starr Foods, Inc.,* 16 Or App 475, 519 P2d 101 (1974).

Plaintiffs contend that the trial court failed to consider certain factors relevant to the award of attorney fees enumerated in a line of cases beginning with *Schmalz v. Arnwine,* 118 Or 300, 246 P 718 (1926). The trial court here considered the information presented in the affidavits and specifically stated that its award was based on the complexity of the issues involved, the number of hours spent and the number of hours the court considered necessary in view of the nature of the issues involved, the results achieved and the competence of counsel. There is evidence to support the award made.

Affirmed.