**WOLF,**
*Appellant - Cross-Respondent,*
*v.*
**NORDSTROM, INC.,**
*Respondent - Cross-Appellant.*

(No. A7811-18189, CA 17116)

626 P2d 953

Raymond J. Conboy, Portland, argued the cause for appellant - cross-respondent. With him on the briefs were

Garry L. Kahn and Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland.

Katherine H. O'Neal, Portland, argued the cause for respondent - cross-appellant. With her on the briefs were Mark H. Wagner and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Plaintiff filed this action for damages, charging defendant with false imprisonment and battery. Before submission of the case to the jury, defendant moved to have the issue of punitive damages withdrawn. The court granted defendant's motion. Plaintiff moved pursuant to ORCP 63B to allow the jury to consider the issue of punitive damages, subject to the court's ruling. Plaintiff's motion was allowed. The jury found for plaintiff on the false imprisonment count and awarded general and punitive damages. Defendant again moved to have punitive damages withdrawn from the case, which motion was allowed. A judgment order was thereupon entered awarding plaintiff general damages only. Plaintiff appeals. Defendant cross-appeals, contending the trial court erred in directing a verdict in favor of the plaintiff on the issue of probable cause to detain the plaintiff and in refusing to instruct the jury on ORS 131.655, the probable cause defense.[1] We affirm.

The evidence, viewed in the light most favorable to plaintiff who received a jury verdict, discloses the following: Defendant's security officer received information from other employees of defendant that a teenage boy in the company of another boy had stolen a pair of tennis shoes from the store. She received a description of the shoplifter. As she began pursuing the two boys she asked Mr. Bailey, an employee of defendant, to assist her. She described the shoplifter to Mr. Bailey as a young white male around 5'3" tall, weighing 120 pounds, with brown hair, blue eyes and wearing blue jeans, a green jacket, a baseball cap and the

[1] ORS 131.655 provides:

"(1) Notwithstanding any other provision of law, a peace officer, merchant or merchant's employe who has probable cause for believing that a person has committed theft of property of a store or other merchantile establishment may detain and interrogate the person in regard thereto in a reasonable manner and for a reasonable time.

"(2) If a peace officer, merchant or merchant's employe, with probable cause for believing that a person has committed theft of property of a store or other merchantile establishment, detains and interrogates the person in regard thereto, and the person thereafter brings against the peace officer, merchant or merchant's employe any civil or criminal action based upon the detention and interrogation, such probable cause shall be a defense to the action, if the detention and interrogation were done in a reasonable manner and for a reasonable time."

stolen new white tennis shoes. She and Mr. Bailey then separated. Shortly thereafter, two male adults apprehended plaintiff in The Galleria, a shopping complex with a main entrance about two blocks from defendant's store. One of the two men was identified as Mr. Calhoun, an employee of defendant. The defendant did not call either Mr. Calhoun or the other male adult who apprehended plaintiff in The Galleria as a witness. The record is silent on the other man's identity. Also, the record does not indicate what information the two men had regarding the shoplifting incident, or if they had information, where they had acquired it.

Plaintiff had come to The Galleria to meet his mother, who was employed in the building. He is a white male, age 13, 5'4" tall, weighing 125 pounds, with brown hair and brown eyes. He was wearing blue jeans, a green jacket and well-worn white tennis shoes. The two men asked plaintiff if he had been in the defendant's store; he said he had not. Mr. Calhoun then took hold of plaintiff and walked him back to the defendant's store. Plaintiff tried unsuccessfully to break away but was restrained by the men.

In the meantime, defendant's security officers had apprehended the boys who had shoplifted the shoes in a parking lot across the street from the defendant's store, in the opposite direction from The Galleria. When the two men arrived at the defendant's store with the plaintiff and discovered the shoplifters had been apprehended, plaintiff was immediately released. He returned to The Galleria and reported the incident to his mother. She called the defendant's security office and arranged a meeting with security personnel. During this meeting defendant's personnel were polite and apologetic to the plaintiff and his mother.[2]

---

[2] Plaintiff's mother testified on cross-examination:

"* * * * *

"A. We had a discussion about the incident and bringing Howard back to the store. And I stated that I understood parts of it, but I did not understand how sales people could be expected to go out on the street and apprehend somebody without having a card or identification saying they were with Nordstrom's, or having their picture on it, so a person would know that, yes, I am from Nordstrom, and I have this right.

Plaintiff sought actual and punitive damages. The trial court held that defendant did not have probable cause to detain plaintiff and entered a directed verdict on the issue of liability. The trial court also ruled that there was no evidence of malice to justify an award of punitive damages.

Plaintiff's appeal is limited to the issue whether the trial court erred in setting aside the jury's award of punitive damages and in entering judgment for general damages only.

■    Plaintiff relies upon *Fabish v. Montgomery Ward,* 276 Or 29, 553 P2d 1057 (1976). In *Fabish,* plaintiff testified that during his one-hour detention he repeatedly asked the defendant to be allowed to use the telephone to prove a book alleged to have been stolen was his property.

"Q. What happened after that?

"A. Well, we discussed that, and I wanted to know then why if Howard told them I was in the Galleria on the fourth floor, why they didn't come up to get me, and they told me they do not bring the parents in until after this questioning.

"Q. I take it then that they apologized and Howard and you left, or did anything else happen?

"A. They explained their position and they were sorry for the incident, and they hoped I would understand.

"* * * * *

"Q. Now, when you had this meeting with the people at Nordstrom, at any time during your discussions was anybody rude or impolite to you?

"A. No.

"Q. Did anybody raise their voice to you?

"A. No.

"Q. Were they polite and apologetic?

"A. Polite and apologetic, but I thought very blase.

"Q. Did they specifically say they were sorry for the incident?

"A. Yes.

"Q. When your son came to you in your office and told you what had happened, didn't he specifically tell you that they had apologized to him?

"A. Yes.

"Q. And that they had shaken his hand?

"A. Yes. Mr. Calhoun had shaken his hand and sent him up to me.

"* * * * *."

His requests were denied by the defendant. The Supreme Court said: "If the jury found defendant so acted, the allowance of punitive damages was proper to deter this type of conduct." The aggravated conduct which the Supreme Court recognized in *Fabish* is not found here, and the trial judge committed no error in withdrawing the issue of punitive damages from the jury on the evidence in this case. *See Lukas v. J. C. Penney Co.,* 233 Or 345, 378 P2d 717 (1963).

In its cross-appeal defendant contends first that the trial court erred in granting plaintiff's motion for a directed verdict on defendant's liability.

Under ORS 131.655(1) defendant would have been allowed to detain and interrogate plaintiff in a reasonable manner and for a reasonable time if it had probable cause for believing plaintiff was guilty of shoplifting. The parties agree that, because there was no conflict in the evidence, the issue of probable cause was a matter of law to be determined by the court. *State ex rel Young v. Crookham, supra* at 71; *Lukas v. J. C. Penney Co., supra* at 357, 359 and 361. The trial court ruled that there was no probable cause to detain plaintiff and, therefore, granted plaintiff's motion for a directed verdict on defendant's liability.

■   Defendant maintains that there was probable cause to detain plaintiff because he matched the general description of the shoplifter. Plaintiff was not wearing a baseball cap nor was he wearing or carrying a pair of *new* white tennis shoes. He was about two blocks from defendant's store in the opposite direction from where the shoplifters had run. Plaintiff's mother was employed in the building where he was apprehended. The trial court found "that a reasonable, prudent, cautious, intelligent person would not have detained the plaintiff by grabbing him and forcibly removing him to the Nordstrom's store" and that there was "not probable cause to detain the plaintiff." We agree. *See Coblyn v. Kennedy's, Inc.,* 359 Mass 319, 268 NE2d 860, 47 ALR3d 991 (1971).

■   Defendant next assigns as error the refusal of the trial court to instruct the jury pursuant to ORS 131.655(2). There being no dispute as to the facts in the case, the issue of probable cause was decided by the court adversely to the

defendant. Because probable cause was not a fact issue, the trial judge correctly denied the requested instruction.[3]

Affirmed.

---

[3] Defendant's other assignment of error relates to the jury instructions given on punitive damages. As we have decided that punitive damages were not appropriate, we need not address this issue.