Argued and submitted June 26, affirmed August 31,
reconsideration denied October 20,
petition for review denied December 2, 1981 (292 Or 109)

# 2-D'S LOGGING, INC.,
## *Respondent,*
### *v.*
# WEYERHAEUSER COMPANY,
## *Appellant.*

## (No. 77-209-L, CA 18624)

632 P2d 1319

Stanley C. Jones, Klamath Falls, argued the cause for appellant. With him on the briefs was Giacomini, Jones & Associates, Klamath Falls.

Blair M. Henderson, Klamath Falls, argued the cause for respondent. With him on the brief was Henderson & Molatore, Klamath Falls.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant appeals from a judgment entered on a jury verdict which awarded plaintiff compensatory and punitive damages in this fraud action. We affirm.

Plaintiff is a corporation which was formed in early 1975 by two contract loggers, Presley D. Wilson and Don Crisp.[1] In 1974, Wilson and Crisp were engaged in logging operations as a partnership in Estacada and La-Grande, Oregon. In August of that year, they responded to a newspaper advertisement which stated that defendant had "opportunities for contractors experienced in small log logging" and that interested persons should contact Robert Thompson, a "contract supervisor" for defendant, in Klamath Falls. Various discussions ensued between and among Wilson, Crisp, Thompson and a second contract supervisor for defendant, Michael Smith. Smith's and Thompson's objective was to find loggers to furnish logs to defendant's mill in Bly, which was then curtailed in its operations by a serious shortage of logs.

According to plaintiff, Smith and Thompson fraudulently represented that defendant would make jobs available to the two loggers for ten to ten and one-half months each year over a five to seven-year period. Plaintiff alleged that, as a result of the representation, Wilson and Crisp relocated their logging operations to the Silver Lake area.

The specific jobs to be performed by the two loggers were governed by a series of written contracts. Between September, 1974, and July, 1976, at least seven such contracts or amended contracts were entered into between the parties. The contracts were for varying lengths of time and varying services. The job contracts between defendant and the two loggers and, later, between defendant and plaintiff, were signed on behalf of defendant by John Zingg; defendant claims that Zingg had authority to contract for it, and that neither Smith nor Thompson had contracting authority. The evidence is conflicting as to whether and when

---

[1] Many of the relevant events occurred prior to the formation of the corporation, when Wilson and Crisp were operating as a partnership. Except in one particular, discussed *infra,* the incorporation of plaintiff and the individual or incorporated status of the principals are not germane to the issues in this case.

Wilson or Crisp became aware of any such limitation on Smith's or Thompson's authority.

During the period Wilson and Crisp were performing services for defendant, they purchased heavy equipment which, they claim, they were induced to do by further representations from Thompson regarding availability of jobs. Defendant did not make jobs available with anything approaching the regularity plaintiff claims the agents promised, and plaintiff encountered serious financial difficulties. Its services to defendant ceased in early 1977.

Plaintiff brought this action in September, 1977, seeking damages for lost profits, for the loss of its equity in the equipment it purchased and subsequently lost through repossession, and punitive damages. In essence, plaintiff's theory was that Smith and Thompson made the representations concerning availability of work because of the immediate needs of the Bly mill and that Smith and Thompson did not intend to honor their assurances of regular or long-term work at the time they made the representations. The jury awarded plaintiff compensatory damages and, in addition, punitive damages of $1,500,000.

■    Defendant's first contention on appeal is that plaintiff was barred by the parol evidence rule, ORS 41.740,[2] from introducing evidence of the fraudulent statements of Thompson and/or Smith, because the statements were at variance with the subsequently executed written job contracts. We disagree. By its terms, ORS 41.740 "does not exclude other evidence * * * to establish illegality or fraud." *See also, Green v. Uncle Don's Mobile City,* 279 Or 425, 430, n 1, 568 P2d 1375 (1977). In any event, the parol evidence rule would not apply here because the fraudulent

_____

[2] ORS 41.740 provides:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except where a mistake or imperfection of the writing is put in issue by the pleadings or where the validity of the agreement is the fact in dispute. However this section does not exclude other evidence of the circumstances under which the agreement was made, or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud. The term 'agreement' includes deeds and wills as well as contracts between parties."

representations did not relate to the same subject as the various job contracts. The representations were to the effect that work would be available for a certain period with a certain degree of regularity; the written contracts related to *specific jobs* to be performed by plaintiff, and not to the overall duration or regularity of *some* work being made available by defendant.

Defendant's next argument is that the representations allegedly made by Smith and/or Thompson exceeded their authority and were beyond the scope of their employment as contract supervisors. The question is one of fact, and there was sufficient evidence from which the jury could and, apparently, did find the fact adversely to defendant.

Defendant contends next that plaintiff waived its right to seek damages for the fraudulent representations by entering into the job contracts after the representations were made. Defendant states:

"* * * When one who claims to have been defrauded, with knowledge of the fraud, enters into another agreement respecting the same transaction with the one guilty of the fraud, he, the injured party, thereby waives and relinquishes all right to damages on account of such fraud. * * *

"Plaintiff alleged that on the date of its incorporation, February 21, 1975 it received an assignment from Wilson and Crisp that included 'any cause of action for damages which might have been brought by the partnership against defendant * * * for * * * fraud, deceit, or misrepresentation * * *.' "

■ ■  For reasons similar to those expressed in our discussion of defendant's parol evidence argument, it is questionable whether the representations and the job contracts pertained to the same matter. In any event, there was evidence from which the jury could find that plaintiff did not discover that defendant did not intend to act in accordance with its representations and that plaintiff therefore did not discover the fraud until its relation with defendant ended in 1977. Because the fraud was not known to plaintiff at the time the written contracts were entered into, defendant's waiver argument fails. We disagree with

defendant's theory that the allegation in plaintiff's complaint pertaining to the February 21, 1975, assignment to the new corporation by the Wilson-Crisp partnership of any cause of action against defendant for fraud, misrepresentation or deceit conclusively establishes that the fraud was known to plaintiff in February, 1975. The complaint was, of course, drafted after the fraud was discovered. As we read the allegation, its meaning is that *all* rights of action of the partnership were assigned to the corporation and that the assignment covered the action being commenced. In effect, the allegation is simply one of standing.

■     Defendant also argues, on the basis of the same time of discovery theory it advances in support of its waiver argument, that the fraud was discovered by plaintiff more than two years before the action was brought and that the action was therefore untimely under ORS 12.110(1). We reject defendant's statute of limitations argument for the same reasons we rejected the time of discovery proposition in its waiver argument.

Defendant next contends that the alleged representations were oral promises of future employment of more than a year's duration and, as such, were void under the statute of frauds[3] and were not admissible as evidence. Plaintiff argues that the statute of frauds is not a defense to this fraud action and relies on *Burgdorfer v. Thielemann,* 153 Or 354, 55 P2d 1122, 104 ALR 1407 (1936), where the Supreme Court stated:

> "We think that, in an action for deceit, this provision of the statute does not have the effect of rendering inadmissible testimony of an oral promise made with the fraudulent intent on the part of the promisor at the time the promise was made not to fulfill or perform the same." 153 Or at 361.

Defendant states:

---

[3] ORS 41.580(1) provides:

"In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents in the cases prescribed by law:

"(1) An agreement that by its terms is not to be performed within a year from the making."

"* * * To the extent that *Burgdorfer* stands for the general proposition that the statute of frauds is never available as a defense in an action for promissory fraud the case should be re-examined and the dicta disapproved or limited in application. * * *"

Defendant's invitation to disapprove the Supreme Court's opinion in *Burgdorfer* cannot be accepted by *this* court.

Defendant's next contention is that plaintiff failed to carry its burden of proving damages for lost profits and for loss of equity in the repossessed equipment. Plaintiff's proof of lost profits consisted solely of evidence of the amount of profit the two loggers generated during the 55-day period of performance of their first job contract for defendant. That figure was multiplied to produce total amounts for five and seven years, respectively. The trial court subsequently reduced those amounts in submitting the question to the jury to reflect offsets which had not been taken into account in plaintiff's calculations.

Defendant contends that the evidence was insufficient, because there was no probability that plaintiff would have earned profits at the same rate if jobs had been provided with the regularity defendant's agents had represented. *See Welch v. U.S. Bancorp,* 286 Or 673, 596 P2d 947 (1979). Plaintiff responds that the first contract was the only one "providing continuous work according to the terms of the oral representations" and was therefore in effect the only available evidence. While there is some merit to defendant's argument, we conclude that defendant's contentions relate more to the weight of plaintiff's evidence than its sufficiency and that the evidence was sufficient under the standards articulated in *Welch v. U.S. Bancorp, supra,* and by this court in *Kimball v. Little River Lumber,* 44 Or App 497, 606 P2d 660, *rev den* 289 Or 155 (1980).

We also conclude, over defendant's challenge, that plaintiff produced sufficient evidence of the value of its equity in the equipment to support the jury's award. However, defendant also appears to argue that plaintiff did not prove that the equipment had been repossessed, i.e., that the equity had been lost. We find nothing in its assignment of error which indicates defendant raised that point at trial. In moving to strike the relevant allegation, defendant's attorney stated, according to the assignment of error:

" 'Now, the third motion directed toward damages relates to the loss of equipment and rather than read this entire paragraph, because it's a long one, I move to strike on behalf of the Defendant each sentence - each motion made separately as to each sentence - between lines 16 on page 5 through line 9 on page 6.

"'* * * * *

" 'Now, nowhere in the law is there any basis for damages to be measured by the inability of the Plaintiff to pay for the equipment or based upon how much equipment he would have had in the future had he performed differently than the Defendant permitted him. * * *

" 'Now, this is not only sheer speculation and conjecture, it's not even supported in the testimony of any of the parties that this was even a reasonable possibility let alone a reasonable probability would have occurred. * * *' "

Nothing in counsel's comments apprised the trial judge that defendant questioned the proof of the fact of repossession, and we accordingly do not consider the argument.

Defendant next argues that plaintiff failed to prove "promissory fraud." We conclude that plaintiff's proof was adequate to enable the jury to find by clear and convincing evidence that defendant committed fraud. *See Bausch v. Myers,* 273 Or 376, 379, 541 P2d 817 (1975).

■      Defendant's next contention is that the court erred in its instruction to the jury on whether Thompson's and/or Smith's representations were made in the scope of their employment. Defendant also argues that the court erred by refusing to give four of its requested instructions on the general subject of the two agents' authority. The trial judge instructed the jury:

"You are instructed that a corporation can act only through its officers, agents or employees. In this case, if any officer, agent, or employee of the corporate party made the representations as charged against that party, such statements are to be treated as the act of that party, if within the scope of such person's employment.

"You are instructed that any misrepresentations you find to have been made by Smith or Thompson are the misrepresentations of Defendant, Weyerhaeuser Company, if Smith or Thompson at the time of making any misrepresentations were performing service for Defendant, Weyerhaeuser, in the furtherance of Weyerhaeuser's business.

"It is not necessary that you find that any misrepresentations were actually authorized to be made by Defendant, Weyerhaeuser Company."[4]

Defendant's requested instructions were to various effects, but the main points embodied in them which the instruction given did not communicate were (1) that Thompson and Smith had to have actual or apparent authority to make *contracts* on defendant's behalf for defendant to be responsible for their *representations;* (2) that there could be no liability if plaintiff knew Thompson and Smith had no contracting authority, or plaintiff had reason to question whether they had such authority; and (3) that plaintiff had no right to rely on the representations if it was aware that someone other than Thompson or Smith approved contracts on behalf of defendant.

Plaintiff's theory was that Thompson and/or Smith made the representations in the scope of their employment as contract supervisors for defendant. Restatement (Second) of Agency § 257 (1958) provides:

"A principal is subject to liability for loss caused to another by the other's reliance upon a tortious representation of a servant or other agent, if the representation is:

"(a) authorized;

"(b) apparently authorized; or

"(c) *within the power of the agent to make for the principal.*" (Emphasis added.)

The instruction given by the court adequately apprised the jury of the correct legal principles it was to apply. Moreover, the instructions requested by defendant and refused by the court were not legally correct, at least insofar as they equate the question of Thompson's and Smith's authority to *contract* for defendant with the question of whether defendant can be held liable for those two employees' fraudulent *representations.*

Defendant also assigns error to the court's denial of two motions, made at the conclusion of the evidence, to strike allegations in the complaint. Assuming *arguendo* that either or both motions should have been allowed, we find no possibility of prejudice.

---

[4] In its assignment of error, defendant sets out the second and third of the quoted paragraphs, but omits the very relevant first paragraph.

Defendant's final assignment of error is that the court should not have submitted the issue of punitive damages to the jury. The first argument defendant makes in support of that assignment is that there was no evidence of aggravated circumstances, malice, willfulness, intent to injure, or the like, to justify assessment of punitive damages.

The opinions of the Supreme Court and this court on when punitive damages are awardable,[5] and when their recoverability is a question for the factfinder, have at best given rise to mixed signals and, at worst, have been inconsistent and schizophrenic. In *McElwain v. Georgia-Pacific,* 245 Or 247, 421 P2d 957 (1966), plaintiffs sought compensatory and punitive damages for injury to their property caused by emissions from defendant's mill. The Supreme Court reversed the trial court's withdrawal of the punitive damages issue from the jury and stated:

> "Although this court has on occasion indulged in the dictum that punitive damages are not 'favored in the law,' it has, nevertheless, uniformly sanctioned the recovery of punitive damages whenever there was evidence of a wrongful act done intentionally, with knowledge that it would cause harm to a particular person or persons. * * * Malice is the term most frequently used in our decisions to define a state of mind that will justify the imposition of punitive damages. Malice, as a basis for punitive damages, signifies nothing more than a wrongful act done intentionally, without just cause or excuse. * * * The intentional disregard of the interest of another is the equivalent of legal malice, and justifies punitive damages for trespass. * * * Where there is proof of an intentional, unjustifiable

---

[5] The basic standard for when punitive damages are recoverable was defined as follows in *Noe v. Kaiser Foundation Hosp.,* 248 Or 420, 435 P2d 306, 27 ALR3d 1268 (1967):

> "Punitive damages can only be justified on the theory of determent. See Hodel, The Doctrine of Exemplary Damages in Oregon, 44 Or L Rev 175 (1965). It is only in those instances where the violation of societal interests is sufficiently great and of a kind that sanctions would tend to prevent, that the use of punitive damages is proper. Regardless of the nomenclature by which a violation of these obligations is described (grossly negligent, willful, wanton, malicious, etc.), it is apparent that this court has decided that it is proper to use the sanction of punitive damages where there has been a particularly aggravated [conduct] * * *." 248 Or at 425.

The standard has been expressed in various ways in Oregon appellate opinions, but the *Noe* formulation is suitably representative.

infliction of harm with deliberate disregard of the social consequences, the question of award of punitive damages is for the jury. * * *" (Citations omitted.) 245 Or at 249.

However, the courts' decisions have not consistently followed the *McElwain* test, and two conflicting patterns have emerged: first, that whether malice, deterability, aggravated violation of societal interests, or similar factors are present is a fact question for the jury, subject to the same limited scope of appellate review as any other fact question; and, second, that whether a defendant's conduct warrants punitive damages is essentially a question for the court. The conflicting threads of authority are rendered the more difficult to unravel by the fact that the courts have *nominally* applied a sufficiency of the evidence standard in both categories of decision.

Some randomly chosen examples of the disparate approaches are offered as illustrations:

1.  In *Fabish v. Montgomery Ward,* 276 Or 29, 553 P2d 1057 (1976), the court affirmed an award of punitive damages in a false imprisonment case, where the plaintiff was detained for an hour without being permitted to use a telephone to prove his innocence. In so doing, the court said that, in *Lukas v. J.C. Penney Co.,* 233 Or 345, 378 P2d 717 (1963), on which the defendant in *Fabish* relied, "there was no such evidence of aggravated conduct." 276 Or at 32. In *Lukas,* also a false imprisonment case, the court reversed an award of punitive damages because it concluded there was insufficient evidence of malice. The evidence in *Lukas* showed, among other things, that the defendant's employee attempted to wrest a shopping bag from plaintiff's granddaughter by physical force. The short and conclusory opinion in *Fabish* does not explain why detention without phone privileges for an hour is more aggravated than assault and battery. The only explanation *can* be in the eye of the beholder; but *Fabish* and *Lukas* obscure whether the court or the factfinder is the relevant beholder. *See also, Wolf v. Nordstrom,* 51 Or App 715, 626 P2d 953, *rev allowed,* 291 Or 117 (1981).

2.  In *Chamberlain v. Jim Fisher Motors, Inc.,* 282 Or 229, 578 P2d 1225 (1978), the court stated:

"* * *[W]e do not believe that the circumstances under which defendant made the representation relied upon in

this case as the basis for an award of punitive damages were such as to properly support such an award. We have, on previous occasions, set aside awards for punitive damages in cases in which, *in our opinion,* defendants' misconduct was not 'sufficiently arbitrary and unconscionable to constitute a grievous violation of societal interests.' [Citations omitted.]" (Emphasis added.) 282 Or at 238.

Then, after analyzing the evidence, the court concluded:

"Under these facts we hold that *there was insufficient evidence* to make it proper *to submit to the jury the question whether,* in making the representation relied upon by plaintiff as the basis for its claim to an award of punitive damages, *defendant's conduct was such as to justify an award of punitive damages.* It follows that it was error to deny defendant's 'motion to strike punitive damages.'" (Footnote omitted; emphasis added.) 282 Or at 239.

The two quoted passages from the same opinion graphically demonstrate the ambivalence in the analytical approach the courts have taken between viewing the aggravated nature of the defendant's conduct as a question for the court or as a question for the trier of fact.

In sum, as noted in *McElwain,* punitive damages are not a favorite of the law or the courts. The disfavor in which they are held has resulted in a perplexing and contorted mode of judicial review which purports to follow a sufficiency of the evidence standard but which, in reality, is an imprecise pattern of subjective judicial reactions mixed with some episodes of deference to jury verdicts.

We do not suggest that the question of whether a defendant's conduct warrants punitive damages is, *by its nature, necessarily* a pure question of fact. The Supreme Court has held as a matter of law that certain acts, or acts committed when there are certain attendant circumstances, are generally not a proper basis for the award of punitive damages, *e.g.,* breach of contract and acts for which statutory civil penalties exist. *Farris v. U.S. Fid. and Guar. Co.,* 284 Or 453, 587 P2d 1015 (1978). Nothing of which we are aware would prevent the Supreme Court from ruling, as a general proposition, that the submission of claims for punitive damages to the factfinder does not depend solely on the existence of substantial evidence to support an inference of malice, deterability, aggravated

violation of societal interests, or the like. At least in cases where there is no specific statutory authorization for their award, the imposition of punitive damages involves a policy or value judgment; allowing the factfinder to make that judgment is a rational alternative, but it might be equally rational to require the trial court, in deciding whether the question of punitive damages should go to the jury, to make a preliminary decision regarding the appropriateness of punitive damages for the most aggravated conduct which *could* be found from the evidence.

Absent an express and consistent rejection of it, however, we understand the rule stated in *McElwain* to remain the applicable one: decisions to award punitive damages in cases such as this are factual determinations and are reviewable as such on appeal; accordingly, tempting as it might be under the present facts for us to make our own assessment of the appropriateness of punitive damages, the correctness of defendant's contention that there was insufficient evidence to submit the punitive damages issue to the jury turns solely on whether there was substantial evidence to support this imposition.

■ In *Schmidt v. Pine Tree Land Dev.,* 291 Or 462, 631 P2d 1373 (1981), the Supreme Court stated:

> "* * * The function of punitive damages to penalize harmful acts done with a bad motive may ordinarily justify liability for such damages in cases of intentional fraud, *see Green v. Uncle Don's Mobile City,* 279 Or 425, 432, 568 P2d 1375 (1977), *Lewis v. Worldwide Imports, Inc.,* 238 Or 580, 582, 395 P2d 922 (1964), but this court has not held that punitive damages may always be recovered for recklessly false representations. [Citation omitted.]" 291 Or at 465.

In the present case, there was sufficient evidence from which the jury could find that defendant's employees committed intentional fraud and that their conduct was motivated or accompanied by "a state of mind [justifying] the imposition of punitive damages." *McElwain v. Georgia-Pacific, supra,* 245 Or at 249.

Defendant relies on *Cays v. McDaniel et al,* 204 Or 449, 283 P2d 658 (1955), where the Supreme Court affirmed an award of general damages in a fraud action

based on the defendant sellers' misrepresentation that a used car was new and their tampering with the speedometer to reduce the mileage reading. However, the court deleted the jury's award of punitive damages and stated:

> "* * * It is quite well established by the authorities that punitive damages are not allowable in cases of simple fraud; to be allowable, the fraud must be an aggravated one, as where it is gross, malicious, or wanton. * * *
> "* * * * *
>
> "We are of the opinion, therefore, that punitive damages are not recoverable in an action of damages for fraud and deceit, unless the fraud is accompanied by extraordinary or exceptional circumstances of aggravation, clearly indicating malice and willfulness." 204 Or at 457.

*Cays* was overruled by *Lewis v. Worldwide Imports, Inc.,* 238 Or 580, 395 P2d 922 (1964), where the court stated:

> "* * * In the *Cays* case the court further said that 'wholly apart from the matter of pleading, the record itself fails to establish any aggravating circumstances of the character necessary to form the basis of an allowance of punitive damages.' (204 Or at 458). If, by this, the court meant that turning back a speedometer for the purpose of deceiving a purchaser is not sufficient to support the imposition of punitive damages against the seller, we are unable to agree and to this extent *Cays v. McDaniel,* supra must be overruled." 238 Or at 582.

Neither party cites *Lewis* nor mentions the overruling of *Cays.* Disturbing as we find that fact to be in itself, we are even more displeased by the following language in defendant's brief:

> "* * * Although the court has since ruled that turning back the speedometer of an automobile to deceive a purchaser would be sufficient to support an award of punitive damages, the statement of general principles in *Cays* remains valid and would certainly apply to the present case, where no circumstances are established to justify submission of the issue to the jury. * * *"

Defendant does not identify the case in which the court "since ruled" that a seller's tampering with a speedometer can warrant punitive damages, but we find no case other than *Lewis* in which it has done so. Defendant's counsel is reminded of the obligation of attorneys to call adverse authority to the court's attention.

We do not agree that the overruling by *Lewis* leaves the portions of *Cays* on which defendant relies undiminished as authority. *See Schmidt v. Pine Tree Land Dev., supra; Millikin v. Green,* 283 Or 283, 286, 583 P2d 548 (1978). In any event, we would conclude that the evidence to support the punitive damages award would be sufficient here, even if the *Cays* principle relied on by defendant were viable.

Defendant also contends, in connection with its punitive damages assignment of error, that there was no proof of fraud, "let alone aggravated fraud," and that

"* * * [i]t cannot reasonably be concluded that the corporate conduct was so contrary to 'societal interests' as to be the kind that an award of punitive damages would tend to prevent when the only conduct consists of alleged promises unknown to the defendant corporation, and about which it was not advised until more than two years later.

"* * * * *

"* * * Here we have a case where Smith and Thompson deny making the alleged promises at all, and it is this denial that forms the sole basis for plaintiff's claim that defendant did not intend to perform the promises. The writer has found no case awarding punitive damages in such a fact situation."

To the extent defendant is arguing that Smith's and/or Thompson's fraud was unknown to defendant as a corporate entity at any time the entity could have done anything about it and that punitive damages againt defendant are therefore inappropriate, *Stroud v. Denny's Restaurant,* 271 Or 430, 532 P2d 790 (1975), holding that corporations are liable for punitive damages for acts of employees committed within the scope of their employment, resolves the issue adversely to defendant. To the extent defendant is arguing there was in fact no fraud committed by anyone, the jury disagreed.

Defendant's final point is:

"Punitive damages are not allowed in actions for breach of contract. It is submitted that punitive damages should not become available in an action arising from contract merely because the complaint contains a count *ex delicto.* Plaintiff's theory would expand the right to punitive damages to cases where no contract is proven other than the written agreements executed by both parties."

The simple answer is that the punitive damages were awarded for fraud and not for breach of contract.

Affirmed.