Argued at Pendleton October 27; affirmed December 8, 1936

# PATTERSON *v.* WESTERN LOAN & BUILDING CO.

### (62 P. (2d) 946)

Department 2.

*A. S. Grant,* of Baker (H. L. Mulliner, of Salt Lake City, Utah, on the brief), for appellant.

*Blaine Hallock,* of Baker (Hallock, Donald & Banta, of Baker, on the brief), for respondent.

RAND, J. This action against the Western Loan and Building Company, a Utah corporation engaged in the business of a building and loan association, was brought to recover the damage alleged to have been sustained by the plaintiff through the false and fraudulent representations of one Gordon Weggeland, an alleged agent of the defendant company. The plaintiff had verdict and judgment for $1000, and the defendant has appealed.

Substantially the facts set forth in the complaint are as follows: On January 9, 1933, the plaintiff was the holder of a mutual investment certificate, issued by the defendant and numbered H-10402, upon which the defendant was obligated to pay to plaintiff the sum of $1,500. On that day, Weggeland, who was duly authorized to act as the agent of the defendant, went to plaintiff's home in Baker, Oregon, and induced the plaintiff to surrender said certificate for cancellation by the defendant and to accept in lieu thereof the promise that the defendant would pay to her the sum

of $500 in cash and issue and deliver to her ten shares of its reserve fund stock of the par value of $100 each. At that time Weggeland represented to plaintiff that this reserve fund stock was recommended by the defendant as the safest and best paying class of stock issued by the defendant company and would pay a return of more than 6 per cent per annum and probably as high as 10 or 12 per cent, and that, in purchasing the same, the plaintiff would be making a sound, safe, conservative and valuable investment which was then worth and would at all times be worth the sum of $1000. That plaintiff believed said representations to be true and, relying upon them, surrendered her certificate to Weggeland and he delivered it to the defendant company for cancellation. The same was then cancelled and the defendant company then paid to plaintiff the sum of $500 and issued and delivered to her the said 10 shares of reserve fund stock. That said representations were false and fraudulent in that the ten shares of reserve fund stock was then of no value whatever and were falsely and fraudulently made to induce plaintiff to part with her said certificate and, by reason thereof, plaintiff was defrauded in the sum of $1,000.

The answer of the defendant company admitted the surrender by plaintiff to the defendant of said certificate and its cancellation, and alleged that the defendant paid thereon to the plaintiff the sum of $500 and issued and delivered to her the 10 shares of reserve fund stock, but denied that Weggeland, in securing the certificate, was acting, or authorized to act, as its agent, and alleged that he was acting for a third party. It also alleged that at said time the defendant was insolvent and that its assets were subsequently taken over by the bank commissioner of the state of Utah for liquidation and that later said assets were returned

to the defendant company for the purposes of reorganization and that the company was reorganized and a settlement made with its former certificate and stock holders by issuing to them other stock at the rate of 65 cents on each dollar of its obligations, and, while denying any liability on its part, it alleged that if plaintiff had retained her certificate, she would have received under said arrangement the sum of $975 in cash or other securities and that, by reason thereof, her damage did not exceed the sum of $475.

As a further defense, defendant alleged that, under the statutes of the state of Utah, all withdrawals, whether of stock or matured certificates, must be paid in the order that notice of such withdrawal is received by the issuing company, and that on said January 9, 1933, there were a large number of notices of withdrawal which had been received and filed by the company prior to the time when plaintiff's certificate was surrendered.

As a further defense, it was alleged that the action was not brought within the time limited by section 1-206, Oregon Code 1930, and that, at the time complained of, Weggeland was not licensed or authorized either by the defendant or by law to transact the business complained of in the state of Oregon "if he did so act".

The defendant demurred to the complaint upon the ground (1) that it failed to state facts sufficient to constitute a cause of action, in that the representations alleged to have been made by Weggeland were mere predictions or promises and matters of opinion and not representations of past or existing facts, and (2) that the action had not been brought within the time limited in the Code. The demurrer was overruled upon both grounds and these rulings were assigned as error

upon this appeal. At the close of the testimony, the defendant moved for a directed verdict upon both of said grounds and this motion was overruled and that ruling is also assigned as error.

■ It is well settled that a representation to be actionable must relate to past or existing facts and cannot consist of the mere broken promises, unfulfilled predictions or erroneous conjectures as to future events, but this rule is subject to the further rule that statements relating to the future will not preclude liability for fraud if such statements were intended and accepted as representations of fact and involved a matter peculiarly within the speaker's knowledge, nor if the promises and predictions also involved a misstatement or concealment of existing facts: 26 C. J., section 25, p. 1087.

■ Hence, while it has generally been held that statements of a vendor or his agent that a purchase of a thing offered for sale would be a good investment is a matter of opinion only and not actionable, as was held under the facts involved in *Howard v. Merrick,* 145 Or. 573, 579 (27 P. (2d) 891), cited and relied upon by the defendant, yet that rule is not applicable in a case where, as here, the subject offered for sale is stock to be issued by an insolvent corporation and the representation that its purchase would be a good investment is made to a person ignorant of the facts, who believed it to be true and acted upon it to his detriment. In such a case, the representation is not a mere expression of opinion but a fraudulent misrepresentation of an existing fact or condition of things. It was also a fraudulent concealment of a condition which, if it had been disclosed, would have prevented the party from acting to his detriment.

Hence, in so far as the demurrer and the motion for a directed verdict were based upon the ground that these representations were not actionable, they were properly overruled.

■ The further objection sought to be raised by the demurrer and by the motion for a directed verdict that the action had not been brought within the time limited by the Code was also properly overruled. Section 1-206, Oregon Code 1930, provides that an action for an injury to the person or rights of another not arising on contract shall be commenced within two years but it also provides that where an action at law is based upon fraud or deceit, the limitation shall be deemed to commence only upon the discovery of the fraud or deceit. Both the allegations of the complaint and the evidence were sufficient to remove the bar of the statute. The fraud charged was perpetrated on January 9, 1933, and the action was not commenced until June 8, 1935, but plaintiff's evidence shows that she did not discover the fraud until less than two years before the commencement of the action.

■ Defendant's contention that Weggeland was not acting for the defendant when he induced the plaintiff to surrender her certificate for cancellation is not sustained by the preponderance of the testimony. According to the evidence of L. W. Smeltzer, a witness for the defendant, who had been a director of the defendant company from November, 1921, to March, 1934, Weggeland had been an agent "off and on" of the Western Loan and Building Company for six years. Defendant's Exhibit G, dated September 3, 1932, and signed by the president and secretary of the company "certifies that Gordon Weggeland of Salt Lake City, state of Utah, is hereby constituted and appointed a local agent of this company, for a period of six months from

date, with authority to take applications for its stock, and collect the installments indicated in applications.''

Smeltzer also testified that he himself assisted in preparing defendant's Exhibit F, which was to be "used to sell to our stockholders the new issue of reserve fund stock'', and that he furnished a copy thereof to Weggeland. He further testified:

"Q. What was your object in giving this data to Mr. Weggeland, relative to the earning of the company? A. Mr. Weggeland requested the information from me, which I gave him. Q. That was while he was engaged as salesman in the manner you have indicated? A. He was acting for us as agent at that time. Q. He was acting as agent for you during the month of January, 1933, was he not? A. He was.''

Weggeland also testified that, before he came to Oregon, he knew that Mrs. Patterson had a paid-up investment certificate.

"Q. How did you get that information? A. As an agent of the Western Loan & Building Company, I was furnished with the company's maturity list of stockholders in the various states. Q. And you had that complete list of all maturities in the state of Oregon when you went up there? A. Yes, sir.''

He also testified that the application of Mrs. Patterson for the ten shares of stock was made upon a blank form furnished him by the defendant.

Defendant's Exhibit F, which Smeltzer said he helped to prepare, showed that during 1931 dividends of 10 per cent had been paid upon the reserve fund stock, and a copy of this writing, the evidence shows, was in the hands of Weggeland and was shown to the plaintiff at the time the representations which induced her to act were made.

■ The defendant contends that the cancellation of plaintiff's certificate and the issuance of the 10 shares

of reserve fund stock for $1,000 of the amount then due plaintiff was of no benefit to the defendant company. By this transaction, a present obligation against the defendant for $1,000 was cancelled and a later maturing obligation was accepted in exchange therefor. Hence, if the defendant was at the time insolvent and having difficulty, as a going concern, in meeting its current obligations, the substitution of a later maturing obligation was of benefit to the company.

Defendant has assigned error upon other rulings of the court to which we have not deemed it necessary to specifically refer. Many of these objections concern questions of fact where the testimony was conflicting and, therefore, were settled by the verdict. Again, the bill of exceptions consists of 79 pages and has attached thereto, as an exhibit, the transcript of testimony, consisting of 271 pages, and a large number of exhibits offered upon the trial. As certified, the bill of exceptions recites that, where there is a discrepancy between the statements contained in it and the transcript of evidence, as certified to by the official court reporter, the transcript, and not the bill of exceptions, shall control. This has thrust upon this court the duty of making comparisons which could have been avoided had the matters been presented in a more orderly way. Notwithstanding this, all the assignments of error have been carefully considered and we have been unable to find any reversible error.

For these reasons, the judgment appealed from is affirmed.

BELT, BEAN and BAILEY, JJ., concur.