Argued and submitted April 6, affirmed December 23, 1987, reconsideration denied February 12, petition for review denied March 1, 1988 (305 Or 273)

HAAG et ux,
*Respondents,*

*v.*

CEMBELLIN et ux,
*Third-Party Plaintiffs - Appellants.*

JAMES et al,
*Third-Party Plaintiffs - Respondents,*

*v.*

BENZ,
*Third-Party Defendant - Respondent.*

(C83-7-106; CA A38553)

748 P2d 143

Jacob Tanzer, Portland, argued the cause for appellants. With him on the brief were Ball, Janik & Novack, and Grant, Ferguson, Carter, P.C., Portland.

Harry A. Slack, Jr., Coquille, argued the cause for respondents Roger Haag and Patricia Haag. With him on the brief was Slack, Stone and Gillespie, Coquille.

John R. Coutrakon, and Coutrakon & Babin, P.C., Brookings, filed the brief for respondent Judy Benz.

No appearance for respondents Floyd James and James Realty.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Plaintiffs, Mr. and Mrs. Haag, brought this action against defendants, Mr. and Mrs. Cembellin, for intentional fraud and violation of the Unlawful Trade Practices Act (UTPA) in connection with the sale of real property.[1] The jury returned a verdict for the Haags on both claims, awarding general damages of $11,000 and punitive damages of $33,000. The Cembellins appeal and assign errors to the trial court's denial of their motions for directed verdict, to evidentiary rulings and to the submission of the issue of punitive damages to the jury. We affirm.

The Haags wanted to purchase ocean view property to build their retirement home. Obtaining property with a view was extremely important to them. In November 1981, Benz, a real estate agent with James Realty, showed the Haags a lot in Zwagg Rock Acres, a subdivision on a bluff overlooking the ocean. The Haags were shown a map of the subdivision indicating that a development known as Macklyn Cove Condominiums was to be built below the bluff next to the beach. Because Benz was not familiar with the condominium project, she asked the Cembellins, who were the owners of the subdivision and the developers of the condominiums, to come to her office to talk with the Haags. The Haags asked Frank Cembellin about the effect of the condominium development on the view from the lot which they were interested in purchasing. Roger Haag testified that Frank Cembellin stated:

"[W]ell, you don't have to worry about the condominiums * * * they're going to be very nice looking and they're not going to hurt your view * * * and * * * the only way you're going to see these is if you walk right up to the edge of that bluff there in front of where we built our house * * * then when you look down you are going to look straight down and you'll see a roof line or a roof outline and that's all you're going to see."

At the time of the conversation, complete architectural plans

---

[1] Floyd James and Judy Benz, as employes of James Realty, acted to facilitate the sale. In their second amended complaint, the Haags named James and James Realty as defendants. The trial court granted summary judgment in favor of James and James Realty. The Cembellins filed a cross-complaint against James and James Realty and a third party complaint against Benz. The trial court granted summary judgment in favor of Benz and struck the Cembellins' cross-claim against James and James Realty. A judgment was entered dismissing these claims. None of the defendants assigns error to any of these rulings.

for the condominium project had been drafted, reviewed by Frank Cembellin and filed with the city. The Cembellins did not show the plans to the Haags or tell them that they existed. The Haags and the Cembellins signed the earnest money agreement that same day.

In October, 1982, after the Haags had begun construction of their home, Roger Haag learned that construction of the condominiums had begun. He became concerned about their dimensions and location and went to city hall where he obtained the building plans for the condominium project, which showed that they were going to be built forward on concrete piers to the edge of the beach and would extend 67 feet above the beach. The Haags then realized that, contrary to Frank Cembellin's statement, the condominiums would impair their view. The completed condominiums are partly visible as a part of the panorama from the Haags' front window. After reviewing the plans, the Haags initiated this action against the Cembellins.

■    The Cembellins argue that the trial court erred in denying their motions for directed verdict.[2] Because the verdict was for the Haags, we will consider the evidence, including inferences, in the light most favorable to them, and we will not set the verdict aside unless we can affirmatively say that there was *no* evidence from which the jury could have found the facts necessary to support their claim. *Brown v. J.C. Penney Co.,* 297 Or 695, 688 P2d 811 (1984).

■    The Cembellins argue that Frank Cembellin's statement did not constitute fraud as a matter of law because it was either an opinion or a promise of future performance, neither of which would support a fraud claim. Generally, statements of opinion are not actionable, even though false. *Jeska v. Mulhall,* 71 Or App 819, 693 P2d 1335 (1985). However,

"statements of opinion regarding quality, value, or the like,

---

[2] The Cembellins moved for a directed verdict at the close of the Haags' case and at the close of the evidence. The Haags argue that the motions were directed only to the fraud claim and, thus, that the Cembellins have waived any error regarding their claim for violation of the UTPA. The UTPA issue was not presented in the motion made at the close of the Haags' case. However, the Cembellins' motion at the close of all the evidence incorporated the rationale of the first motion and specifically stated that the arguments presented applied to all the counts, including the UTPA claim. The trial court did not differentiate between the counts in its denial of the motion. The Cembellins assign error to the general denial.

may be considered as misrepresentations of fact, that is, of the speaker's state of mind, if a fiduciary relation exists between the parties * * * or where the parties are not on an equal footing and do not have equal knowlege [*sic*] or means of knowledge * * *." (Citation omitted.) *Jeska v. Mulhall, supra,* 71 Or App at 821.

The circumstances under which a statement is made determines whether it is merely an opinion or a representation of fact. Generally, it is a question for the jury. *Peterson v. Auvel,* 275 Or 633, 639, 552 P2d 538 (1976).

■ If there was evidence from which the jury could conclude that Frank Cembellin's statement was a misrepresentation of fact, the question was properly submitted to the jury. There was such evidence. His statement regarding the condominium consisted of two parts:

a. "They're not going to hurt your view;" and

b. "The only way you're going to see these is if you walk right up to the edge of that bluff there in front of where we built our house * * * then when you look down you are going to look straight down and you'll see a roof line or roof outline and that's all you're going to see."

Although the comment that the view would not be hurt, standing alone, does seem fairly subjective, when it is read together with the second part of his statement, it could be understood as a representation of fact. *See Sorenson et ux v. Gardner et ux,* 215 Or 255, 259, 334 P2d 471 (1959); *Olston v. Oregon W. P. & Ry. Co.,* 52 Or 343, 355, 96 P 1095, 97 P 538 (1908). Further, the parties were not on an equal footing. Frank Cembellin had reviewed the architectural plans for the condominiums and was familiar with the details of the project. The Haags, however, did not even know that plans existed. There was evidence from which the jury could have concluded that the statement was a misrepresentation of fact.

The Cembellins also argue that Frank Cembellin's statement was a promise of future performance, which would not support a fraud claim. However, breach of a promise may support a fraud claim when made

"with the knowledge that it probably cannot be performed or with reckless disregard whether the promissor can or cannot perform * * *." *Elizaga v. Kaiser Found. Hospitals,* 259 Or 542, 548, 487 P2d 870 (1971).

Because the statement was made with knowledge of the existing plans, there was evidence from which the jury could find that it was fraudulent. The directed verdict was properly denied.

■ The Cembellins next urge that the trial court should have directed a verdict, because the Haags failed to establish an essential element of fraud, the right to rely on Frank Cembellin's statement. The Cembellins contend that the Haags had constructive knowledge of the details of the condominium development, because James, Benz and James Realty had the complete plans for the condominiums and were the Haags' agents. The Cembellins argue that their knowledge must be imputed to the Haags and that, therefore, in view of that knowledge, it was unreasonable for the Haags to rely on Frank Cembellin's statement. However, even if James and Benz were the Haags' agents, there is evidence that they did not have the condominium plans at the time of the statement.[3] The issue of what knowledge could be imputed to the Haags was a question of fact for the jury.

■ The Cembellins also contend that the Haags cannot assert a right to rely on Frank Cembellin's statement, because they failed to investigate independently the accuracy of the statement. Purchasers have an obligation to exercise reasonable care to safeguard their own interests. *Coy v. Starling,* 53 Or App 76, 80, 630 P2d 1323, *rev den* 291 Or 662 (1981). "[A] purchaser must make use of his means of knowledge * * *." *Baker v. Casey,* 166 Or 433, 437, 112 P2d 1031 (1941). The Haags observed the proposed location of the condominiums and sought information about the project from the Cembellins, who were the developers of the project and who neither offered the Haags the opportunity to review the architectural plans nor informed them of their existence. On the basis of their inspection of the site, the Haags believed that it was possible to construct the condominiums in a manner which would not interfere with their view. At trial, they presented evidence that the condominiums could have been

---

[3] Benz testified that she never saw the architectural plans and that James never told her about any plans. The only map of the subdivision that she saw was the same map which was shown to the Haags. The Haags' first attorney testified that when he interviewed James in December, 1983, James stated that, other than the subdivision map, he had received no plans from the Cembellins. At trial, James testified to the contrary.

built with less impact on the view. They had no reason to believe that Frank Cembellin's statement was not accurate. *See Outcault Advertising Co. v. Jones,* 119 Or 218, 221, 239 P2d 1113 (1925).[4] We cannot say as a matter of law that plaintiffs' conduct did not constitute reasonable care. Thus, the trial court did not err in denying defendants' motion for a directed verdict.[5]

■    The Cembellins' third and fourth assignments of error are that the trial court erred in overruling their objections to the Haags' evidence on damages. Both Roger Haag and the Haags' appraiser estimated the damage to the Haags' lot on the basis of an "impaired view." The Cembellins argue that the evidence is irrelevant and should have been excluded, because Frank Cembellin stated that the view would not be "hurt," not that it would not be "impaired." We do not find the distinction between these terms to be significant. The term "impair" is one synonym for "hurt." *Webster's New International Dictionary* 1104 (3rd ed 1976). The trial court did not err in admitting the evidence.

■■    The Cembellins' final assignment of error is that the trial court erred in submitting the issue of punitive damages to the jury. Punitive damages are appropriate "when there is particularly aggravated misconduct demonstrating a disregard of a societal obligation of the kind sanctions would tend to prevent." *Hall v. Fitzhugh,* 80 Or App 423, 427, 722 P2d 54 (1986). Whether defendants' conduct is of the type to permit the imposition of punitive damages is for the jury to decide, and our review is limited to whether there was substantial

---

[4] This case is distinguishable from *Miller et ux. v. Protrka et ux.,* 193 Or 585, 238 P2d 753 (1952), and *Coy v. Starling, supra,* on which defendants rely for the proposition that plaintiffs did not exercise reasonable care. *Coy* and *Miller* involved commercial transactions in which the sellers made inaccurate representations about the income of motels. In both cases, the purchasers declined the sellers' offers to review the books of account to confirm the sellers' representations. More importantly, in *Miller* we held that there had been no misrepresentation. *See Bodenhamer v. Patterson,* 278 Or 367, 374, 563 P2d 1212 (1977). Additionally, in *Coy,* the plaintiffs knew that the defendant's statement was only an estimate. *Coy v. Starling, supra,* 53 Or App at 81.

[5] We do not need to address these arguments as they apply to defendants' violations of the Unlawful Trade Practices Act. The jury found in favor of plaintiffs on both the fraud and the UTPA claim. The verdict form does not distinguish, however, whether damages were awarded on each claim or on only one of the claims. Neither party objected to the form used. Since the facts to support each claim overlap, the jury's verdict may stand on either claim. *See Byers v. Santiam Ford, Inc.,* 281 Or 411, 574 P2d 1122 (1978).

evidence of the aggravated conduct. *2-D's Logging v. Weyerhaeuser,* 53 Or App 677, 632 P2d 1319, *rev den* 292 Or 109 (1981). In *Schmidt v. Pine Tree Land Dev.,* 291 Or 462, 465, 631 P2d 1373 (1981), the Supreme Court held that proof of intentional fraudulent conduct may justify punitive damages. Because the jury found for the Haags on the fraud claim, it could properly have found that Frank Cembellin's conduct was sufficiently aggravated to justify an award of punitive damages. Therefore, the trial court did not err in submitting the issue to the jury.

Affirmed.