Argued and submitted December 12, 1988, reversed and remanded June 14, 1989

# PICKER,
## *Respondent,*

*v.*

# ROLLINS LEASING CORPORATION,
## *Appellant.*

### (16-86-02608; CA A47638)

776 P2d 1

Thomas Craig Thetford, Lake Oswego, argued the cause for appellant. With him on the briefs were Randolph J. Stevens and Thetford, Stevens, Mario & Schmit, Lake Oswego.

Martha L. Walters, Eugene, argued the cause for respondent. With her on the brief were Gregory E. Skillman and Swanson & Walters, P.C., Eugene.

Before Joseph, Chief Judge, and Graber and Riggs, Judges.

GRABER, J.

## GRABER, J.

Defendant appeals from a summary judgment for plaintiff in this action for overtime wages, vacation pay, statutory penalties, attorney fees and costs. We reverse and remand.[1]

Plaintiff worked for defendant from August 31, 1983, until he voluntarily resigned on September 26, 1985. Several months after he quit, he brought this action. In its answer, defendant denied the material allegations of the complaint and pled as affirmative defenses that plaintiff was exempt from overtime pay requirements, 29 USC § 213(a)(1), and that his trustee in bankruptcy was the real party in interest.[2] Plaintiff denied the affirmative defenses in his reply and then moved for summary judgment.

In his supporting affidavit, plaintiff said that defendant had hired him to work at a "pay rate" of $12.50 per hour, which later "was raised to $13.13 per hour," and that he had worked 398.97 hours of overtime for which he was not paid. To calculate the amount of his wage claim, he multiplied the overtime hours by one and one-half times the hourly rate of pay that he said applied. Plaintiff also stated that, pursuant to defendant's vacation policy, he was entitled to two weeks vacation pay.[3] He did not assert that he was the real party in interest.

Defendant opposed the motion and introduced an affidavit from its service manager, who had hired plaintiff. The manager stated that "[he] disagree[d] with the amount of overtime claimed by [plaintiff]" and that plaintiff was paid $26,000 per year, no matter how many hours he worked per

---

[1] Plaintiff requests damages under ORS 19.160. Because we reverse, he cannot receive damages.

[2] Defendant also counterclaimed for attorney fees, relying on ORS 20.105.

[3] Plaintiff's affidavit reads, in regard to vacation pay:

"When I went to work for [defendant], I was told I would receive two weeks of paid vacation per year. I understood that my right to take vacation accrued on the first day of each calendar year. I was not told that if I resigned or was terminated with any accrued but unexhausted vacation time, I would not receive my vacation time. I expected that I would still be entitled to my vacation time with pay. Defendants [sic] owe me $840 for my vacation time pay. I have requested this money, but it has been denied."

week. Defendant submitted a copy of its written vacation policy, along with deposition testimony explaining how the policy applied. Defendant also argued that "in a prior bankruptcy filing plaintiff failed to include this claim as an asset and therefore he is not a real party in interest to seek recovery of any amounts alleged to be due and owing," but it submitted no evidence to support that contention.

The trial court granted summary judgment to plaintiff. Defendant moved for reconsideration or for a new trial. It argued (among other things) that the trial court lacked subject matter jurisdiction, because plaintiff's wage claim is the property of a bankruptcy trustee, that plaintiff is not the real party in interest, that the evidence did not establish a definite rate or amount of overtime, and that there is a material issue of fact regarding vacation pay. For the first time, defendant provided documentation that plaintiff had filed for bankruptcy. The bankruptcy case had been closed on May 29, 1986, but was reopened on September 17, 1986. The court denied defendant's motion. This appeal followed.

**1.** Defendant's first assignment of error is that plaintiff's bankruptcy petition divested the trial court of subject matter jurisdiction, because only the United States District Court had authority to adjudicate his claims. The circuit court had jurisdiction unless the Constitution or a statute provides otherwise. Or Const, Art VII, § 9. We disagree with defendant's assertion that the bankruptcy code, title 11 USC, so provides.[4] The federal court has original but not exclusive jurisdiction of civil proceedings "related to cases under title 11." 28 USC § 1334(b). Related proceedings include those that "involve causes of action owned by the debtor that became property of the estate under [11 USC] section 541." 1 *Collier on Bankruptcy* ¶ 3.01[1][c][iv] (15th ed 1989). This is such a proceeding. 1 *Collier on Bankruptcy, supra; see also Sierra Switchboard Co. v. Westinghouse Electric Corporation,* 789 F2d 705,

---

[4] Defendant cites 11 USC § 105, which empowers the federal court to issue any order, process or judgment that is necessary or appropriate to carry out the provisions of title 11 of the United States Code. That statute authorizes the bankruptcy court to stay actions in state court, as required by 28 USC § 2283, but does not itself divest state courts of jurisdiction. S. Rept. No. 989, 95th Cong., 2nd sess. 5 (1978), *reprinted in* 1978 U. S. Code Cong. & Admin. News 5815. Defendant does not argue that this action is automatically stayed under 11 USC § 362(a). That section provides that a bankruptcy filing operates as a stay of actions "against the debtor," but not of actions by the debtor.

707-09 (9th Cir 1986). Although defendant could have removed the case to federal court, 28 USC § 1452, the record does not reflect that it attempted to do so.

Defendant's remaining arguments challenge the appropriateness of summary judgment in several ways. It argues that genuine disputes remain concerning who is the real party in interest, how unpaid overtime should be calculated, and whether plaintiff is entitled to benefits under defendant's vacation policy.[5] There is a genuine issue of material fact as to each of those issues. ORCP 47D.

**2, 3.** Plaintiff had the burden to show that no genuine dispute exists, even as to issues that, if the case were tried, would be defendant's burden to prove. *Gorge Leasing Co v. Hanna,* 60 Or App 272, 275, 653 P2d 578, *rev den* 294 Or 491 (1982). Plaintiff offered nothing but a general denial in response to defendant's assertion that he was not the real party in interest. As discussed above, plaintiff's claims, at least in part, became property of the bankruptcy estate. The denial framed the issue but did not resolve it, and it was therefore error for the trial court to grant plaintiff's motion for summary judgment. ORCP 47C.

The defense of real party in interest affects all of plaintiff's substantive claims. We address the overtime and vacation pay issues nonetheless, because they are likely to arise again on remand.

**4.** Defendant's manager stated that he disagreed with the amount of overtime claimed by plaintiff and that plaintiff was paid $26,000 per year, regardless of the number of hours worked per week. Those assertions were sufficient to put at issue the amount of overtime, because calculation of the overtime rate depends in part on whether defendant paid plaintiff on an hourly or salaried basis. 29 USC § 207; *compare* 29 CFR § 778.110 *with* 29 CFR § 778.114.

**5.** With regard to vacation pay, defendant's written policy provides that "[t]erminated employees will be paid for unused accrued vacation based on service completed in previous calendar year," but that, "unless an employee is terminated, there is no payment for unused vacation time."

---

[5] Defendant's remaining arguments are without merit.

Plaintiff argues that under the policy he had accrued two weeks of vacation for 1985 on January 1 of that year, which he did not use before he resigned. The policy could also reasonably mean, as defendant's service manager testified, that plaintiff is entitled to payment for unused vacation from 1984, but not 1985, because he resigned and was not terminated. When a document is ambiguous, as this one is, and the parties provide conflicting evidence about what it was intended to mean, the question of their intent is factual. *Clatsop Co. Diking v. Astoria Marine Const.*, 79 Or App 650, 653, 719 P2d 1321 (1986).

Reversed and remanded.