Argued and submitted May 12, 1993, resubmitted In Banc January 5, reversed and remanded in part; otherwise affirmed March 23, petition for review denied August 30, 1994 (320 Or 109)

Darren CAMPBELL
and Elizabeth Campbell,
*Appellants,*

*v.*

SOUTHLAND CORPORATION,
a Texas corporation,
*Respondent,*
*and*

Larry REED,
*Defendant.*

(9003-01809; CA A75708)

871 P2d 487

Roger Tilbury argued the cause for appellants. With him on the briefs were Roch Steinbach, and William D. Brandt and Ferder, Ogdahl, Brandt & Casebeer.

Rex Armstrong argued the cause for respondent. With him on the brief were Richard A. Hayden and Bogle & Gates.

EDMONDS, J.

Landau, J., concurring in part; dissenting in part.

## EDMONDS, J.

Plaintiffs appeal from a summary judgment entered in favor of defendant.[1] ORCP 47C. They make multiple assignments of error. We conclude that the trial court erred in granting summary judgment, in part.

When there is a genuine issue of material fact, summary judgment is precluded. Defendant has the burden to show that no genuine issue of fact exists, even as to issues on which plaintiffs would have the burden of proof if the case were tried. *Picker v. Rollins Leasing Corp.*, 97 Or App 164, 776 P2d 1 (1989). In considering whether to grant a motion for summary judgment, the court must draw all inferences of fact from the depositions and affidavits against the moving party and in favor of the nonmoving party. *Uihlein v. Albertson's, Inc.*, 282 Or 631, 634, 580 P2d 1014 (1978).

According to the summary judgment evidentiary record,[2] plaintiffs applied for a franchise with defendant to operate a 7-Eleven store. As part of the application process, defendant required plaintiffs to develop a business plan which detailed what income they expected to earn and what expenses they anticipated they would incur in operating the store. The plan presented by plaintiffs to defendant indicated that plaintiffs would need a monthly net income of $3,400 in order to meet their business and personal expenses. In preparing their business plan, plaintiffs obtained from defendant records concerning the store's net income under prior management. According to plaintiffs, defendant gave them a financial summary for the period of July, 1987, through March, 1988, which showed a total net income of $10,445.35,

---

[1] Plaintiffs' claim against defendant Larry Reed was dismissed under ORCP 21A(8). Plaintiffs do not appeal that dismissal. Therefore, when we refer to "defendant," we mean only Southland Corporation.

[2] The parties dispute what is properly included in the summary judgment evidentiary record. The dispute centers on two documents. The first is a "Concise Statement of Disputed Material Facts" which plaintiffs submitted in support of their memorandum in opposition to defendant's summary judgment motion. The second is an affidavit that plaintiffs submitted after the trial court's ruling on the summary judgment motion. Defendant argued to the trial court that both documents were inadmissible. The trial court did not rule specifically on defendant's objections, but entered summary judgment in favor of defendant notwithstanding the submission of the documents. We cannot tell from the record whether the trial court considered the documents. Because our decision is based on evidence other than these documents, we need not determine their admissibility.

and a circular that indicated that the net income for stores in Central Oregon for 1986 ranged from approximately $1,400 to $3,100. Also, there is evidence that plaintiffs were told that the store's net income for April, 1988, was $3,882. Defendant did not disclose to plaintiffs information which showed that the store's average monthly net income for the period of January, 1984, through May, 1988, was $1,340.

After plaintiffs presented their proposed business plan to defendant, the parties met to discuss the feasibility of their proposed budget. Plaintiff Darren Campbell testified in his deposition about his understanding of the financial information that they were given, and the significance of the proposed budget:

"A. Well, my understanding was that these were somebody else's numbers, and that in putting together my business plan, I wasn't going to rely heavily on that except for categories that I knew could be fixed or were very stable * * *. Those types of things I felt would probably be pretty consistent or have a good average.

"* * * * *

"And *it was expressed to us many times by [defendant] that — and this is not just in preparing the business plan — that these numbers are other people's, and you can't — you can't take any stock in them. Because it's in your control, you have control of your store.* If you want payroll to be low, it's up to you to do it.

"The sales — *the sales could be higher if we worked the store and made them higher. Gross profit was one you really can't rely on, because if they were running a low gross profit and we could run a higher one, then the numbers are going to be completely different. So your net income would be considerably different from what this might say versus, you know, what it does say. It — you can't rely on it.*

"Q. Just so that we're clear, you understood that that net income figure was the net income that the [previous franchisees] obtained from their operation of the store during the period reported by this document; is that right?

"A. I did not understand it to be that. To be honest with you, I paid no attention to that figure. And it was not just — because it was — it was told to us that we shouldn't — we get — no. I didn't rely on that. And it says 'income,' it doesn't say 'net.' I don't —.

"* * * * *

"Q. Mr. Campbell, did anyone at Southland tell you that the budget that you submitted as part of the business plan was feasible?

"A. Yeah.

"Q. Who told you that?

"A. I recall Eilene Terry telling me that.

"Q. Can you recall what she told you, what words she used?

"A. That if we stuck to it and worked hard that *it was a [sic] feasible* — she saw that — she felt that we would do it, that we could do it.

"Q. When did she tell you that?

"A. I believe it was at the time that she approved it or we were at the meeting that she was going over it.

"* * * * *

"A. I was relying on [defendant] in approving my business plan, that it was obtainable. I mean, I had very little information to do it and no experience, and I was hoping that by them saying that it's a good business plan, it's feasible * * *." (Emphasis supplied.)

Elizabeth Campbell testified:

"I listened to Eilene Terry. I knew that * * * she was the one that was going to say yea or nay to the business plan. I was very impressed with her. I trusted her very much. I still think a lot of her, and I listened to what she had to say."

Relying on the representations, plaintiffs entered into a franchise agreement with defendant. Under the terms of the agreement, defendant reserved the right to retake possession of the store if plaintiffs allowed their net worth to drop below specified levels. During most of the following 19 months when plaintiffs operated the store, they were unable to maintain the required levels of net worth. Defendant repeatedly granted "net worth exceptions" which set lower net worth goals to be met within specified periods of time. The parties understood that, if plaintiffs were unable to meet the new net worth goals, defendant would be entitled to terminate the franchise on proper notice.

When plaintiffs failed to meet the new goals, defendant gave them the required notice and terminated their franchise. Plaintiffs then filed this action, alleging separate claims for common law misrepresentation, violation of the Oregon Franchise Law, ORS 650.020(1), breach of contract and wrongful termination. Defendant moved for summary judgment on all four claims, and the trial court granted the motion. Plaintiffs argue that the trial court erred in granting the motion as to each of the four claims.

First, we address the trial court's decision with respect to the misrepresentation claim. To prevail, defendant must show that there are no genuine issues of material fact on all of the elements of the claim and that it is entitled to judgment as a matter of law. The elements of a misrepresentation claim are:

"(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." *Webb v. Clark*, 274 Or 387, 391, 546 P2d 1078 (1976). (Citations omitted.)

The crux of plaintiffs' claim is that defendant represented to them that their budgeted monthly income of $3,400 was attainable through the operation of the business, when it knew that it was not. The feasibility of the proposed budget was material to the acquisition of the franchise because it would service the debt load that plaintiffs would incur when they purchased the franchise, and would provide for their living expenses while operating the store. Defendant argues that the undisputed facts are insufficient to establish that it made any misrepresentation of fact or actively concealed any material fact. According to defendant, the alleged misrepresentation on which plaintiffs rely—that the $3,400 net monthly figure was feasible—is as a matter of law only a nonactionable opinion, not a statement of fact. Defendant further argues that there can be no claim for active concealment of records indicating a prior average net monthly income of $1,340, because it disclosed records that showed an average net monthly income of even less than that amount.

■       Whether an expression of opinion can also constitute an actionable misrepresentation depends not only on the words used, but also on the object and design of the words. For example, in *Patterson v. Wester L. & B. Co.*, 155 Or 140, 62 P2d 946 (1936), the defendant told the plaintiff that the stock of an insolvent corporation was a "good investment." The court held that statement to be a representation of fact, because it was made to a person known by the defendant to be ignorant of the facts, and to a person who believed it to be true and relied on it as the basis of his decision to purchase the stock. In that context, the statement that the purchase was a "good investment" was more than an expression of an opinion. However, in a different context, the same words could be nonactionable mere expressions of opinion.

■       Here, the evidence is susceptible of a finding that plaintiffs were on unequal footing with defendant. The summary judgment record shows that Darren Campbell is a high school dropout and had been employed as a sheetmetal worker before he entered into negotiations with defendant. He had no prior retail experience. Elizabeth Campbell's only related experience was as a clerk and assistant manager in a 7-Eleven store in west Portland for a few months. Defendant operates more than 7,000 convenience stores in the United States and Canada, in addition to about the same number overseas. Many of those stores are operated as franchises. Before awarding a franchise, defendant's policy is to interview the potential franchisee. As required by the Federal Trade Commission, defendant furnishes a "Franchise Offering Circular." Defendant also insists, as a condition to its consideration of an application to become franchisees, that prospective purchasers furnish a comprehensive financial statement. In this case, plaintiffs were also asked to complete a proposed three-year budget or "business plan." Plaintiffs assert that defendant undertook to advise them about the feasibility of their plan knowing that they did not know or have the means of learning the truth of the matter and that they would rely on defendant's assessment of the financial feasibility of the proposal. They claim that defendant held out to them that they could rely on its assessment of the feasibility of their proposal and that they were told to disregard the past history of the business. Under those circumstances, the law affords a remedy that may not otherwise exist in an

arms'-length transaction. If the object and design of defendant's statements were to induce plaintiffs to rely on its assessment of the ability of a franchise to service the debt incurred in purchasing the franchise as an asserted fact, then those statements could be more than mere opinions. Whether that was defendant's object and design and whether the statements were understood as assertions of fact are issues that cannot be decided on this record as a matter of law as the dissent would do.

The dissent says that our opinion "needlessly confuses the elements of the tort of misrepresentation," and that our " 'object and design' test is at odds with the case law of this state." 127 Or App at 106. Contrary to the dissent's criticism, our reasoning is not novel and follows established law. In *Patterson v. Western L. & B. Co., supra,* the court said:

> "It is well settled that a representation to be actionable must relate to past or existing facts and cannot consist of the mere broken promises, unfulfilled predictions or erroneous conjectures as to future events, *but this rule is subject to the further rule that statements relating to the future will not preclude liability for fraud if such statements were intended and accepted as representations of fact and involved a matter · peculiarly within the speaker's knowledge,* * * *." 155 Or at 144. (Emphasis supplied.)

For the reasons expressed above, plaintiffs have offered enough evidence to create issues of fact regarding the above elements in this summary judgment proceeding.

The dissent also says that *Frederici v. Lehman,* 230 Or 70, 368 P2d 611 (1962), is directly on point. There, the plaintiff, a real estate dealer and builder, sought to rescind the purchase of real property on which a medical clinic was to be constructed. At the time the contract was entered into, there was a building on the premises occupied by a lessee. Plaintiff testified that defendants represented that plaintiff would be able to get the lessee out within 30 days so that the building could be demolished and that they would have "eight dentists for me" as tenants for the medical-dental building. The court held that the representations were not actionable, because "the statement made was solely one of opinion as to what could be accomplished in the future." 230 Or at 83. It looked at the context of the statement and the fact that it was

made to a knowledgeable person, a real estate dealer and builder. Unlike the plaintiff in *Frederici*, plaintiffs were not on equal footing with defendant. Having concealed a 4-year history of income, defendant told them "you can't take any stock in [other people's numbers] because it's in your control." Darren Campbell testified:

> "I was relying on [defendant] in approving my business plan, that it was obtainable. I mean, I had very little information to do it and no experience, * * *."

It is these facts that make this case distinguishable from *Frederici* and more like the facts in *Patterson v. Wester L. & B. Co., supra.*

■ The dissent also says that, because plaintiffs received information that disclosed an average net income of less than $1,340, the purported concealment of the financial history of the business for a four and one-half year period "does not suffice to create a genuine dispute as to plaintiffs' ignorance of material facts."[3] 127 Or App at 107. Generally, whether a concealment of a fact is material to the parties' bargain is a question of fact. *See Pape' v. Knoll*, 69 Or App 372, 379, 687 P2d 1087, *rev den* 289 Or 150 (1984). In the context of a fraud

---

[3] The dissent also says that plaintiffs fail to allege the concealment of the four and one-half year history of the business as a basis for their claim. Plaintiffs allege:

"7.

"* * * * *

"B. Defendants [*sic*] further failed to disclose material facts to plaintiffs, which facts were necessary for plaintiffs to know in order to understand the investment:

"1. Failed to disclose material fact that there is a high turnover rate amongst 7-Eleven franchisees;

"2. Failed to disclose that these businesses (7-Eleven) operate on narrow profit margins * * *.

"3. Failed to disclose that plaintiffs were inadequately capitalized due to borrowings that defendants [*sic*] knew plaintiffs made in order to get into the business.

"4. Failed to disclose that plaintiffs could fail in their business despite achieving projected gross sales volumes due to insufficient sales of high profit items such as beer and soda pop."

At the time that the above allegations were made, defendant had not yet complied with the trial court's order to produce the store's financial records for the period of 1983 to 1988. Whether the contents of the concealed history will provide evidence regarding plaintiffs' specific allegations of nondisclosure is within the province of a jury to decide.

claim, a material representation is one that would likely affect the conduct of a reasonable person with reference to the transaction. *Millikin v. Green*, 283 Or 283, 285, 583 P2d 548 (1978). Here, we cannot say that a jury could not find that the nondisclosure of a four and one-half year period of the franchise's financial history would have been immaterial to a reasonable person's reliance on defendant's representations in the light of plaintiffs' experience.

■     Defendant also argues that plaintiffs waived any right to bring their fraud claim based on disclaimers signed at the time of the closing of the parties' agreement. When plaintiffs purchased the franchise, they signed documents that included statements that no representations as to profitability had been made by defendant. We confronted a similar issue about the effect of a disclaimer on an intentional misrepresentation claim in *Gearhart v. Goehner*, 74 Or App 95, 701 P2d 461, *rev den* 300 Or 332 (1985). We said:

> "Plaintiff's contention is flawed for two reasons. First, defendant's claim relates to plaintiff's misrepresentation of the immediate past profitability of the market. As to that misrepresentation, plaintiff's *disclaimers about the future performance of the business are immaterial.* Having been led falsely to believe that the market netted approximately $5,000 per month, *defendant was not put on notice as to any different state of affairs* by those disclaimers as to future performance. Second, even if we assume that plaintiff's warnings should have alerted defendant against drawing any conclusions about the market's past profitability, plaintiff cannot depend on those warnings to defeat defendant's claim for rescission.

> " 'A purchaser who has, in fact, been induced to enter a contract by an intentional misrepresentation may rescind the contract even though his reliance may have been negligent.' *Bodenhamer v. Patterson*, 278 Or 367, 374, 563 P2d 1212 (1977)." 74 Or App at 100. (Emphasis supplied.)

When the evidence in this case is viewed in the light most favorable to plaintiffs, a jury could find that defendant induced plaintiffs to purchase the franchise by intentionally concealing material facts about the history of the franchise as well as by intentionally representing that the financial information disclosed was meaningless. Defendant cannot rely on

the disclaimers to escape liability if there were intentional misrepresentations.

■     Because defendant has the burden of proving that it did not misrepresent or conceal material facts and plaintiffs are entitled to all reasonable inferences in their favor, summary judgment is precluded on plaintiffs' common law misrepresentation claim. Similarly, the trial court's decision to grant summary judgment on plaintiffs' Oregon Franchise Law claim was also error. ORS 650.020(1)(b) provides that anyone who sells a franchise is liable to the franchisee if the seller

> "[m]akes any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."

Because an essential element of the claim is proof of an untrue statement of fact, there is a genuine issue of material fact as to whether defendant made false representations of material fact, for the reasons discussed regarding the common law misrepresentation claim.

■     We next address the trial court's decision to grant summary judgment on plaintiffs' breach of contract claim. According to plaintiffs, defendant terminated the franchise agreement without cause. Plaintiffs acknowledge that the franchise agreement provides that defendant had the right to terminate on the basis of plaintiffs' failure to meet the specified net worth requirement. They argue that defendant waived that right by several times threatening to terminate the franchise agreement without following through on the threat. Defendant does not contest the fact that it withdrew several notices of termination. It maintains that it did so on each occasion because plaintiffs had brought their net worth back to the required level. Plaintiffs failed to offer any evidence in the record to controvert that explanation.[4]

■     Plaintiffs also argue that defendant breached the agreement by calculating their net worth on the basis of a mid-month audit instead of a customary end-of-month audit.

---

[4] Plaintiffs' sole response was a reference to a portion of their memorandum in opposition to the summary judgment motion. Plaintiffs cited no affidavits, deposition testimony or other evidence.

Nothing in the franchise agreement prevented defendant from conducting an audit at any time. The agreement provided that defendant could conduct an audit "without notice if Net Worth is less than the minimum." Therefore, there is no genuine issue of material fact about whether defendant breached the franchise agreement, and the trial court did not err in granting summary judgment in favor of defendant on that claim.

We address lastly the trial court's decision to grant summary judgment dismissing plaintiffs' wrongful termination claim. Plaintiffs argue that the trial court should not have granted summary judgment on that claim, because defendant failed to move against it. Our review of the record, however, reveals the contrary: Defendant plainly moved against "all claims." Plaintiffs also argue that defendant's termination of their franchise was part of a deliberate and unlawful strategy to "weed[] out marginal franchisees." Plaintiffs, however, fail to cite any facts in the summary judgment record to support their argument. The trial court did not err in granting summary judgment for defendant on that claim.

Because this case is remanded in part, plaintiffs' remaining assignments of error do not require discussion. Plaintiffs are entitled to reassert their motions for leave to file an amended complaint and to compel production, and the court is at liberty to rule based on the circumstances that exist after remand.

Summary judgment on claims for common law misrepresentation and for violation of the Oregon Franchise Law reversed and remanded; otherwise affirmed.

**LANDAU, J.,** concurring in part; dissenting in part.

I agree with the majority in affirming the trial court's entry of summary judgment in favor of defendant on plaintiffs' breach of contract and wrongful termination claims. I disagree with the majority in reversing the trial court's similar disposition of the misrepresentation and franchise law claims. Accordingly, I dissent from that portion of the majority's opinion.

Plaintiffs allege that they are entitled to damages on their misrepresentation claim, because defendant approved their proposed business plan, which estimated that they would need to generate $3,400 monthly net income from the store to break even. Defendant argues that the claim fails as a matter of law, because the undisputed evidence shows that plaintiffs cannot establish at least one of the requisite elements of the tort. According to defendant, the approval of the business plan does not constitute a representation of fact and is, at best, a nonactionable expression of opinion as to a possible future occurrence. The trial court apparently agreed and entered summary judgment for defendant on that claim. The majority holds that the approval of the business plan could be considered a representation of fact which, in turn, could support a jury verdict in plaintiffs' favor on the misrepresentation claim. The majority is wrong.[1]

Expressions of opinion are not generally representations of fact. In *Frederici et ux v. Lehman et al*, 230 Or 70, 368 P2d 611 (1962), for example, the plaintiffs alleged that they were fraudulently induced to enter into an agreement to purchase commercial real estate by the defendants' representations that there "wouldn't be any problem" obtaining enough tenants to make a planned office building profitable. The trial court denied a motion for a directed verdict on the fraud claim, and the jury returned a verdict in favor of the plaintiffs. The Supreme Court reversed, holding that no reasonable juror could construe the defendants' statements to be anything but nonactionable expressions of opinion as to possible future events. 230 Or at 83.

In this case, plaintiffs allege that they were induced to enter into the franchise agreement by defendant's statements that they should have no problem generating a monthly net income of $3,400 from the store. Those statements are indistinguishable from those found wanting as a matter of law in *Frederici*. They are not misrepresentations of fact. They are merely expressions of opinion as to future events. As such, they are not actionable.

---

[1] Defendant also argues that plaintiffs' claims are barred by certain disclaimers in the approved budget and the franchise agreement. Because I would affirm on the basis of the lack of any evidence of a misrepresentation of a material fact, I would not reach defendant's other arguments.

The majority argues that the general rule that expressions of opinion are not actionable depends on the "object and design" of the opinion and that on that basis, *Frederici* is inapplicable. According to the majority, the general rule was properly applied in *Frederici*, because the parties were on equal footing. The majority finds wholly distinguishable the facts of this case, in which the "object and design" of defendant supposedly was to take advantage of the unequal bargaining position of the parties:

> "If the object and design of defendant's statements were to induce plaintiffs to rely on its assessment of the ability of a franchise to service the debt incurred in purchasing the franchise as an asserted fact, then those statements could be more than mere opinions." 127 Or App at 100.

I have two problems with the majority's analysis.

First, it needlessly confuses the elements of the tort of misrepresentation. A defendant's intentions are the subject of a separate element of the tort. *See, e.g., Webb v. Clark*, 274 Or 387, 391, 546 P2d 1078 (1976). An opinion is not transformed into a representation of fact because of the speaker's intentions. A statement either is or is not a statement of fact. Then, if it is, it will be actionable if it also can be established that the speaker knew it was false and intended reliance on it. 274 Or at 391.

Second, the majority's "object and design" test is at odds with the case law of this state. Expressions of opinion are actionable only

> "if a fiduciary relation exists between the parties as, for example, representations of value made by a real estate broker to his principal, or where the parties are not on equal footing and do not have equal knowledge or means of knowledge." *Holland v. Lentz*, 239 Or 332, 345, 397 P2d 787 (1964).

That rule says nothing about the defendant's "object and design" in offering an opinion. Instead, it focuses on the relationship of the parties and their relative knowledge of the material facts as the basis for treating an opinion as an actionable representation of fact. That is precisely the holding of *Patterson v. Western L. & B. Co.*, 155 Or 140, 62 P2d 946 (1936), on which the majority relies. In that case, the court held that the expression of what would otherwise have

been regarded as opinion would be considered a statement of fact, because the plaintiff was "ignorant of the facts." 155 Or at 144.

In this case, there is neither an allegation nor proof that plaintiffs were ignorant of any material facts. There is evidence, as the majority vigorously asserts, that plaintiffs were inexperienced in the franchise business. Under *Holland v. Lentz, supra,* however, that evidence is insufficient to permit an expression of opinion to be regarded as a representation of fact. There must be evidence of unequal footing *and evidence of plaintiffs' actual lack of "knowledge or means of knowledge"* about the facts. 239 Or at 345. (Emphasis supplied.)

The majority asserts that plaintiffs arguably were unaware that the store had generated substantially less than $3,400 monthly net income under prior management. In support of that assertion, the majority relies on the fact that defendant failed to include in the records it gave to plaintiffs a document indicating a monthly net income of $1,340 over a several-year period. In my view, that document does not suffice to create a genuine dispute as to plaintiffs' ignorance of material facts.

To begin with, plaintiffs failed to allege the concealment of that information as a basis for their fraud claim. Accordingly, evidence regarding defendant's nondisclosure of the document is irrelevant. *Myers v. MHI Investments, Inc.,* 44 Or App 467, 473, 606 P2d 652, *rev den* 289 Or 107 (1980). Moreover, it is undisputed that defendant disclosed other documents concerning the history of the store's operations, which revealed an average monthly net income of *$1,232.* No reasonable juror could infer active concealment of the fact that the store could generate only $1,340 per month when defendant freely disclosed that the store generated $100 per month less than that amount. The trial court correctly determined that there is insufficient evidence to send plaintiffs' misrepresentation claim to a jury. *Seeborg v. General Motors Corporation,* 284 Or 695, 700-01, 588 P2d 1100 (1978); *King v. Talcott,* 80 Or App 701, 705, 723 P2d 1058, *rev den* 302 Or 158 (1986). I would affirm its decision to grant defendant summary judgment on that claim.

Plaintiffs also allege a claim for violation of the state franchise law. ORS 650.020(1)(b) provides that anyone who sells a franchise is liable to the franchisee if the seller

"[m]akes any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."

Because an essential element of the claim is proof of an untrue statement of fact, for the reasons that the record reflects a complete failure of proof on the same element of plaintiffs' common law misrepresentation claim, I would hold that the trial court did not err in granting summary judgment on the franchise law claim.