Argued and submitted May 31, 2002, affirmed June 12, 2003

John BUCKNER,
*Respondent,*

*v.*

HOME DEPOT U.S.A., INC.,
a Delaware corporation;
and Shannen Beckwith,
an individual,
*Appellants.*

9912-13717; A114752

71 P3d 150

Bruce L. Campbell argued the cause for appellants. With him on the briefs was Miller Nash LLP.

Kathryn H. Clarke argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Armstrong, Judge, and Tiktin, Judge pro tempore.

TIKTIN, J. pro tempore.

## TIKTIN, J. pro tempore

Defendants Shannen Beckwith (Beckwith) and Home Depot U.S.A., Inc. (Home Depot), Beckwith's employer, appeal from a judgment for plaintiff on his claim for intentional interference with economic relations. They argue that plaintiff failed to prove that Beckwith interfered with plaintiff's employment by an improper means because there is no evidence that statements that Beckwith made to plaintiff's employer were misrepresentations of fact rather than opinions. We affirm.

Defendants assign error to the trial court's denial of their motion for a directed verdict. We review the trial court's decision on the motion for errors of law and view the evidence in the light most favorable to plaintiff, the nonmoving party, drawing all reasonable inferences in his favor. *Mauri v. Smith*, 324 Or 476, 479, 929 P2d 307 (1996); *Shockey v. City of Portland*, 313 Or 414, 422, 837 P2d 505 (1992). We therefore state the facts most favorably to plaintiff.

Home Depot sells, among other things, floor coverings. Beckwith was the "Lead Install Coordinator" at Home Depot's Tigard store. In that position she supervised employees in the installation department and coordinated the installation of floor coverings that customers had purchased. Home Depot contracted with Tyler & Associates to perform carpet and floor-measuring services for its stores in Oregon, including the Tigard store. Tyler & Associates, in turn, employed plaintiff to perform those services for the Tigard store.

Unlike most other floor measurers, who communicated with the installation department by facsimile, plaintiff normally came into the store to pick up his assignments and drop off his measurements. When he did so he occasionally called Beckwith "Bunny" or "Bun-Bun." She did not ask him to stop but at times responded that her name was Shannen. Plaintiff also tapped Beckwith on the shoulder and arms. According to plaintiff, he did so once; according to Beckwith, he did so several times. Beckwith was uncomfortable with plaintiff's actions, in part because she thought that they undermined her authority as supervisor of the department,

and complained to her supervisors. One of the supervisors called William Tyler, plaintiff's employer, to tell him about Beckwith's complaint. Tyler then called Beckwith at her office. In their conversation, Beckwith told Tyler about her concerns. Tyler responded by suggesting that he could face liability if plaintiff acted in a similar fashion in a customer's home. Beckwith agreed.

While she was talking to Tyler, Beckwith was in the installation department office, and others in the office heard her end of the conversation. According to one employee, during the conversation Beckwith stated "that if there was young women in a house, he wouldn't be safe around them. That he—that Bill [Tyler] had the—had the chance of being sued for—for conduct that [plaintiff] would have." That employee also testified that Beckwith's tone was spiteful and that Beckwith stated that she did not like plaintiff and did not want him working there any more. Another employee gained the impression from the conversation that Beckwith "was after" plaintiff.

On the same day as the conversation with Tyler, Beckwith issued four "charge-backs" to Tyler & Associates for allegedly inaccurate measurements that plaintiff had performed. If Tyler & Associates accepted the charge-backs, plaintiff would be charged for the excess costs on the installations involved. Those were plaintiff's first charge-backs; no one at Home Depot contacted him about them in advance, as was customary. Home Depot later withdrew one of the charge-backs because it did not involve plaintiff's work. Tyler & Associates accepted the others. Plaintiff testified at trial that all four were erroneous.

A few days after his conversation with Beckwith, Tyler fired plaintiff. Plaintiff thereafter brought this action against Beckwith and Home Depot, claiming damages both for defamation and for intentional interference with contract. The jury found in favor of defendants on the defamation claim but awarded plaintiff damages on the intentional interference with contract claim. Defendants appeal the resulting judgment.

■■ The elements of a claim for intentional interference with economic relations are:

"(1) the existence of a professional or business relationship * * *, (2) intentional interference with the relationship, (3) by a third party, (4) accomplished though improper means or for an improper purpose, (5) a causal relationship between the interference and damage to the economic relationship, and (6) damages."

*McGanty v. Staudenraus*, 321 Or 532, 535, 901 P2d 841 (1995). The issue we consider on appeal involves the fourth element, the use of improper means or the existence of an improper purpose.[1] In his complaint, plaintiff alleged that defendants used the improper means of intentional misrepresentation to interfere with his contractual relations with Tyler & Associates. At trial he relied on Beckwith's statement to Tyler and on the charge-backs to prove that allegation. On appeal he relies only on the statement, referring to the charge-backs solely as evidence of Beckwith's intent to get him fired. Defendants argue that there was no evidence that Beckwith made an intentional misrepresentation—that is, that she acted with an improper purpose or by improper means—because her statement was a mere opinion. We therefore must determine whether a jury could find that Beckwith's statement constituted an intentional misrepresentation rather than, as defendants argue, a mere opinion. If her statement was only an opinion, then plaintiff has failed to prove this element of his claim for relief.[2]

■       Whether Beckwith's statement was only an opinion or was an actionable assertion of fact is normally a question of fact for the jury.[3] *See Peterson v. Auvel*, 275 Or 633, 639-40, 552 P2d 538 (1976); *Campbell v. Southland Corp.*, 127 Or App 93, 99-100, 871 P2d 487, *rev den*, 320 Or 109 (1994);

---

[1] In their second assignment of error defendants argue that there was insufficient evidence that Beckwith intended to interfere with plaintiff's business relationship with Tyler & Associates. We reject that assignment without discussion.

[2] Defendants raise no issue, and we do not decide, what if any other elements of the underlying tort of intentional misrepresentation plaintiff must prove in order to establish the intentional means element of the tort of intentional interference with economic relations. *See Top Service Body Shop v. Allstate Ins. Co.*, 283 Or 201, 210 n 11, 582 P2d 1365 (1978).

[3] In defamation cases, whether a statement is an opinion or one of fact is a question of law. *See Slover v. State Board of Clinical Social Workers*, 144 Or App 565, 568, 927 P2d 1068 (1996); *Bock v. Zittenfield*, 66 Or App 97, 101, 672 P2d 1237 (1983), *rev den*, 296 Or 486 (1984).

*Haag v. Cembellin*, 89 Or App 75, 79, 748 P2d 143 (1987), *rev den*, 305 Or 273 (1988). However, if the circumstances in which the statement was made allow only one inference to be drawn, the court may decide as a matter of law that a statement is an opinion, *Frank v. Fitz Enterprises, Inc.*, 106 Or App 183, 187, 806 P2d 720 (1991), or a statement of fact, *Jeska v. Mulhall*, 71 Or App 819, 823, 693 P2d 1335 (1985). In the context of this case, we look to whether a reasonable factfinder could have found that Beckwith's statement was more than a mere opinion.

■ ■ Defendants argue that Beckwith did no more than express her opinion in response to Tyler's comment about the effect of plaintiff's activity on Tyler's business and the liability that it might create. We agree that Beckwith phrased what she said in the form of an opinion. A statement in the form of an opinion, however, may be treated as a representation of fact if the parties are on an unequal footing and do not have equal knowledge or means of knowledge, *see Holland v. Lentz*, 239 Or 332, 397 P2d 787 (1964); *Frank*, 106 Or App at 186, so that what on the surface appears as an opinion actually implies the existence of facts that are undisclosed to the listener. *See Hickey v. Settlemeier*, 141 Or App 103, 110, 917 P2d 44, *rev den*, 323 Or 690 (1996). Determining that a statement couched as an opinion is such a representation of fact requires considering such factors as "[t]o whom, with what knowledge and in what context a defendant makes a statement," *Jeska*, 71 Or App at 822, and whether the "object and design" of the statement is to induce reliance on it. *Campbell*, 127 Or App at 100.

On its face, Beckwith's statement appears to be an opinion. She simply speculated about how plaintiff might act in the future if he were in a home alone with young women. Defendants argue that, before she made the statement, Beckwith had already fully disclosed the facts that were the basis for her opinion and that Tyler had already reached the same conclusion based on those disclosed facts. Thus, according to defendants, Beckwith's concurrence with Tyler's comment added nothing to what she had already said. In particular, her statement did not falsely suggest that plaintiff had engaged in more egregious conduct than what Beckwith had already described.

Defendants' argument is one possible reading of Beckwith's statement, but it is not the only one. Plaintiff alleged in his complaint that Beckwith's statement was a false assertion that he had engaged in "sexual misconduct." In support of that allegation, he argues on appeal that Beckwith's statement implies that she knew that plaintiff had committed more serious indiscretions and that Tyler could not know that she had disclosed all of the relevant facts to him. We agree that someone who heard the statement could understand it as going beyond mere agreement with Tyler's suggestion that plaintiff's conduct might result in liability for Tyler. Beckwith's remark that plaintiff "wouldn't be safe" in a house where there were "young women" could imply significantly more egregious misbehavior than the specific things—questionable comments in passing and minor undesired contact—that Beckwith had previously described to Tyler. As plaintiff alleged in his complaint, that more egregious behavior could include previous sexual misconduct. Because that is a permissible inference from Beckwith's statement, the trial court correctly denied defendants' motion for a directed verdict.

Affirmed.